Kevin Díaz, OSB No. 970480
Email: kdiaz@aclu-or.org
**ACLU Foundation of Oregon**
PO Box 40585
Portland, OR 97240
Tel.: (503) 227-6928; Fax: (503) 227-6948

Nathan Freed Wessler (*pro hac vice* application pending)
Email: nwessler@aclu.org
Ben Wizner (*pro hac vice* application pending)
Email: bwizner@aclu.org
**American Civil Liberties Union Foundation**
125 Broad Street, 18th Floor
New York, NY 10004
Tel.: (212) 549-2500; Fax: (212) 549-2654

Attorneys for the Plaintiffs-Intervenors

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **OREGON PRESCRIPTION DRUG MONITORING PROGRAM**, an agency of the **STATE OF OREGON**, <br><br> Plaintiff, <br><br> v. <br><br> **UNITED STATES DRUG ENFORCEMENT ADMINISTRATION**, an agency of the **UNITED STATES DEPARTMENT OF JUSTICE**, <br><br> Defendant. | Case No.: 3:12-cv-02023-HA <br><br> **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE** |

**JOHN DOE 1, JOHN DOE 2, JOHN DOE 3, JOHN DOE 4, DR. JAMES ROE, and ACLU OF OREGON,**

       Plaintiffs-Intervenors,

              v.

**UNITED STATES DRUG ENFORCEMENT ADMINISTRATION**, an agency of the **UNITED STATES DEPARTMENT OF JUSTICE,**

       Defendant in Intervention.

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...............................................................................................ii

CORPORATE DISCLOSURE STATEMENT ...............................................................iv

FACTUAL BACKGROUND ............................................................................................1

ARGUMENT ......................................................................................................................7

    I.    MOVANTS ARE ENTITLED TO INTERVENE AS OF RIGHT .......................7

        A.    The Motion To Intervene Is Timely...........................................................8

        B.    Movants Have A Significant Fourth Amendment Interest In Ensuring That Their Prescription Records Are Not Disclosed To Law Enforcement Without A Warrant Based On Probable Cause ...............................................................................9

        C.    The Disposition Of This Lawsuit May Irreparably Impair Movants' Ability To Protect Their Interests ...........................................................12

        D.    The Existing Parties May Not Adequately Represent Movants' Interests In This Litigation.....................................................................13

    II.    MOVANTS ARE ENTITLED TO PERMISSIVE INTERVENTION.............16

CONCLUSION.................................................................................................................18

CERTIFICATE OF COMPLIANCE ............................................................................19

## **TABLE OF AUTHORITIES**

**Cases**

*California ex rel. Lockyer v. United States*, 450 F.3d 436 (9th Cir. 2006)...................... 11, 15, 16

*Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893 (9th Cir. 2011)......... 9, 15

*Cnty. Of Fresno v. Andrus*, 622 F.2d 436 (9th Cir. 1980) ............................................................. 9

*Coal. for a Sustainable Delta v. Carlson*, No. 1:08-CV-00397 OWW, 2008 WL 2237038 (E.D. Cal. May 29, 2008) ......................................................................................................... 16

Doe v. Attorney Gen. of the U.S., 941 F.2d 780 (9th Cir. 1991).................................................. 10

*Nat'l Assoc. of Letter Carriers, AFL-CIO v. U.S. Postal Serv.*, 604 F. Supp. 2d 665 (S.D.N.Y. 2009) ....................................................................................................................... 10

*Nw. Forest Res. Council v. Glickman*, 82 F.3d 825 (9th Cir. 1996)............................................... 8

Reno v. Doe ex rel. Lavery, 518 U.S. 1014 (1996) ..................................................................... 10

*Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525 (9th Cir. 1983).................................................. 16

*Sierra Club v. U.S. Envtl. Prot. Agency*, 995 F.2d 1478 (9th Cir. 1993)........................................ 8

*Siskiyou Reg'l Educ. Project v. U.S. Forest Serv.*, No. Civ. 03-3013-CO, 2003 WL 23976354 (D. Or. June 16, 2003)............................................................................................................... 9

*Sorrell v. IMS Health Inc.*, 131 S. Ct. 2653 (2011) ..................................................................... 10

*Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326 (9th Cir. 1977) ...................................... 17

*State v. Skinner*, 10 So. 3d 1212 (La. 2009) ............................................................................... 10

*Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810 (9th Cir. 2001)............................... passim

*Tech. & Intellectual Prop. Strategies Grp. PC v. Insperity, Inc.*, No. 12-CV-03163-LHK, 2012 WL 6001098 (N.D. Cal. Nov. 29, 2012) ....................................................................... 8

*Trbovich v. United Mine Workers of America*, 404 U.S. 528 (1972) ............................... 13, 14, 16

*Tucson Woman's Clinic v. Eden*, 379 F.3d 531 (9th Cir. 2004)..................................................... 9

*United States v. Alisal Water Corp.*, 370 F.3d 915 (9th Cir. 2004)................................................ 8

*United States v. City of Los Angeles*, 288 F.3d 391 (9th Cir. 2002)......................................... 7, 17

*United States v. Oregon*, 839 F.2d 635 (9th Cir. 1988) ..................................................... 14

*United States v. State of Oregon Prescription Drug Monitoring Program*, 12-MC-298 (D. Or. Aug. 24, 2012) ...................................................................................................... 3, 4

*Venegas v. Skaggs*, 867 F.2d 527 (9th Cir. 1989) ....................................................... 17

*Whalen v. Roe*, 429 U.S. 589 (1977) ...................................................................... 10

*Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011) ......................................... 7, 8

*Zurich Am. Ins. Co. v. ACE Am. Ins. Co.*, No. CIV-S-11-0881 KJM, 2012 WL 3884695 (E.D. Cal. Sept. 6, 2012) ................................................................................................. 9

## Statutes

21 U.S.C. § 876(a) ............................................................................................ 12

28 U.S.C. § 1331 .............................................................................................. 17

Or. Rev. Stat. § 431.962 ....................................................................................... 2

Or. Rev. Stat. § 431.964 (1) .................................................................................... 2

Or. Rev. Stat. § 431.966 ...................................................................................... 11

Or. Rev. Stat. § 431.966(2)(a)(C) ......................................................................... 3, 14

Or. Rev. Stat. § 431.966(6) .................................................................................. 11

## Rules

Fed. R. Civ. P. 24(a) ........................................................................................... 7

Fed. R. Civ. P. 24(b) .......................................................................................... 16

## Treatises

Wayne LaFave, Search and Seizure (5th ed. 2012) .................................................... 10

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Civil Procedure 7.1, the American Civil Liberties Union of Oregon, Inc. certifies that it is a not-for-profit corporation, with no parent corporation or publicly-traded stock.


Dated:  January 25, 2013

/s/ Ben Wizner
Ben Wizner

iv - MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE

Pursuant to Federal Rule of Civil Procedure 24(a), John Does 1–4, Dr. James Roe, and the ACLU of Oregon ("Movants") move for leave to intervene as of right as plaintiffs in this action in order to protect their constitutional right to be free of unreasonable searches. In the alternative, Movants request permission to intervene under Federal Rule of Civil Procedure 24(b). Pursuant to Local Rule 7-1, the parties have conferred and have been unable to resolve their dispute.[1]

Movants are individuals whose protected health information and constitutional rights are directly at issue in this lawsuit. Because this motion is timely, Movants' fundamental rights are at stake, disposition of this lawsuit will impair their ability to protect those rights, and Movants have unique, personal interests in the information that is the subject of this lawsuit that are different from the parties' interests, intervention is appropriate to ensure that Movants' constitutional rights will not be compromised in the ongoing dispute between Plaintiff, the State of Oregon Prescription Drug Monitoring Program, and Defendant, the Drug Enforcement Administration ("DEA").

## **FACTUAL BACKGROUND**

In 2009, the Oregon legislature created the Oregon Prescription Drug Monitoring Program ("PDMP"), an electronic database maintained by the Oregon Health Authority that records information about all "prescription drugs dispensed by pharmacies in Oregon that are classified in schedules II–IV under the federal Controlled Substances Act."[2] Or. Rev. Stat. §

---

[1] Defendant Drug Enforcement Administration objects to Movants' Motion to Intervene. Plaintiff Oregon Prescription Drug Monitoring Program takes no position on this motion.
[2] The Controlled Substances Act creates five categories of controlled substances, divided into schedules I–V.  *See* Drug Enforcement Administration, Office of Diversion Control, Controlled Substance Schedules, http://www.deadiversion.usdoj.gov/schedules/#define. Schedule I drugs

431.962. *See* Intervenors' Compl., attached as Ex. A, ¶ 22. The PDMP began collecting information in June 2011 and was fully operational in September of that year. Intervenors' Compl. ¶ 23.

After dispensing a schedule II–IV prescription drug in Oregon, pharmacies are required to electronically report to the PDMP the name, address, and date of birth of the patient; identification of the practitioner who prescribed the drug; and identification of the drug and the quantity dispensed. *Id.* ¶ 24 (citing Or. Rev. Stat. § 431.964(1)). Approximately seven million prescriptions are uploaded to the PDMP system annually, and protected health information about identifiable patients is retained for three years. *Id.* ¶¶ 25–26.

Schedule II–IV drugs are used to treat a wide range of serious medical conditions, including weight loss associated with AIDS, anxiety disorders, post-traumatic stress disorder, panic disorders, alcohol addiction withdrawal symptoms, heroin addiction, testosterone deficiency, chronic and acute pain, seizure disorders, narcolepsy, insomnia, Attention Deficit Hyperactivity Disorder, and migraines. *Id.* ¶ 27. A prescription for a schedule II–IV medication will often reveal a patient's underlying medical condition. Thus, information about an individual's prescriptions in the PDMP can reveal a great deal of sensitive medical information. In recognition of Oregon residents' privacy interest in their prescription records, the legislation creating the PDMP included strong privacy protections that sharply limit access to personally identifiable prescription information in the database. Relevant here, the PDMP is prohibited from

---

"have no currently accepted medical use in the United States, a lack of accepted safety for use under medical supervision, and a high potential for abuse," and are not available for prescription. *Id.* Drugs in schedules II–IV include a wide variety of frequently prescribed psychiatric drugs, narcotic painkillers, and non-narcotic drugs.  For examples, see *id.*

disclosing prescription records to law enforcement agencies unless presented with a "valid court order based on probable cause." *Id.* ¶ 30 (quoting Or. Rev. Stat. § 431.966(2)(a)(C)).

Notwithstanding the requirement of a court order based on probable cause under Oregon law, the Drug Enforcement Administration ("DEA") has been attempting to obtain protected health information from the PDMP using administrative subpoenas pursuant to 21 U.S.C. § 876. Intervenors' Compl. ¶ 33; *see also* Defendant's Answer ¶ 3. Section 876 permits certain federal law enforcement officials to issue and serve subpoenas seeking records "relevant or material" to a controlled substances investigation. Intervenors' Compl. ¶ 31. The subpoenas are issued without first being presented to a court, but are judicially enforceable if the recipient declines to honor them. *Id.* ¶ 32. The DEA regularly issues § 876 subpoenas to the PDMP, and has stated that it will issue approximately two subpoenas to the PDMP per month for the foreseeable future. *Id.* ¶ 39; *see also* Compl. ¶ 3.

The State of Oregon has refused to comply with the DEA subpoenas on the basis that complying with them would violate Oregon law. The DEA takes the position that the Oregon requirement of a court order based on probable cause is preempted by § 876. Intervenors' Compl. ¶ 43. The DEA has obtained judicial enforcement of at least one subpoena. *Id.* ¶ 37. That subpoena, issued on January 5, 2012, sought production of "a Physician Profile for all Schedule II-V controlled substance prescriptions written by [a specific doctor, whose name is redacted from public filings] from 6/1/2011 through 1/06/2012." *Id.* ¶ 34; *see also* Memorandum in Support of Petition to Enforce DEA Administrative Subpoena at 2, *United States v. State of Oregon Prescription Drug Monitoring Program* (hereinafter *United States v. Oregon PDMP*), 12-MC-298 (D. Or. Aug. 24, 2012). In its petition to enforce the subpoena, the DEA specifically

3 - MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE

stated that redacted protected health information could not reasonably be used in the investigation, and therefore that it was seeking the names and other identifying information of individual patients who filled prescriptions written by the doctor under investigation. Intervenors' Compl. ¶ 35; Declaration of Tyler D. Warner ¶ 6, *United States v. Oregon PDMP*, 12-MC-298 (D. Or. Aug. 24, 2012) ). On August 27, 2012, a magistrate judge in the District of Oregon granted the DEA's petition to enforce the subpoena and found the state requirement of a court order based on probable cause to be preempted. *United States v. Oregon PDMP*, 12-MC-298 (D. Or. Aug. 27, 2012). The PDMP complied with the magistrate judge's order and disclosed the protected prescription information requested by the subpoena to the DEA. *Id.* ¶ 38.

After the August 2012 magistrate judge's order, the State of Oregon maintained its position that state law precluded it from complying with DEA subpoenas for protected health information in the PDMP. Intervenors' Compl. ¶ 40. After receiving at least two more § 876 subpoenas, the State of Oregon filed suit in this Court seeking a declaration that Oregon's restrictions on law enforcement access are not preempted and that the state "cannot be compelled to disclose an individual's protected health information to the DEA pursuant to an administrative subpoena unless so ordered by a federal court." Compl. at 4. Movants seek to intervene in that suit in order to raise claims under the Fourth Amendment.

The information contained in the PDMP and requested by the DEA implicates the fundamental rights of Oregon residents and physicians practicing in Oregon, including Movants. If the DEA were to obtain further prescription records from the PDMP without obtaining a warrant based on probable cause, it would be able to learn what schedule II–IV medications individuals are taking and, by extension, the nature of their underlying medical conditions. This

4 - MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE

would violate the reasonable expectation of privacy that doctors and patients have in their

protected health information. Movants all have prescription records subject to recording in the

PDMP,[3] and are particularly distressed by the prospect of that information being turned over to

the DEA without a court order based on probable cause. For example:

- John Doe 4[4] is a medical student in the Portland area and a resident of Oregon. He
  identifies as transgender and, after being diagnosed with gender identity disorder
  approximately three years ago, he began hormone replacement therapy. This
  therapy involves self-administering injections of prescription testosterone, a
  schedule III drug, once every two weeks. He considers his prescription records
  and information about his treatment to be private, and is distressed by the
  possibility that the DEA may access his prescription records contained in the
  PDMP without a warrant. Intervenors' Compl. ¶¶ 51–66.

- John Doe 3, a small business owner, takes clonazepam, a schedule IV drug, to
  treat anxiety and post traumatic stress disorders. John Doe 3 also suffers from a
  genetic blood disorder that prevents him from taking over-the-counter pain
  medications. As a result, he takes Vicodin, a schedule III drug, to relieve the types
  of pain that most people are able to treat with over-the-counter medications. He
  considers information about his prescriptions and the information about his
  physical and mental health they reveal to be private, and is distressed by the

---

[3] Movant ACLU of Oregon seeks to intervene as a plaintiff on behalf of its members who have
prescription records in the PDMP.
[4] Unless otherwise indicated, use of pseudonymous names or gender pronouns does not signify
that Movants are male or female.

prospect of the DEA gaining access to that information without a warrant. *Id*. ¶¶ 67–91.

- John Doe 2, an attorney, has been diagnosed with gender identity disorder and is undergoing hormone replacement therapy as part of his transition from female to male gender identity. His therapy consists of injections of prescription testosterone. He considers information about his testosterone prescription and the status of his transition to be private, and is distressed by the prospect of the DEA gaining access to it without a warrant. *Id*. ¶¶ 92–112.

- John Doe 1, a retired CEO, takes four medications classified in schedules II or IV under the Federal Controlled Substances Act to treat recurring kidney stones and persistent insomnia caused by restless leg syndrome. He considers information about his prescriptions and the health conditions they treat to be private, and is distressed by the prospect of the DEA gaining access to it without a warrant. *Id*. ¶¶ 113–134.

- James Roe, M.D., is an internist who primarily treats geriatric and hospice patients. Because of the nature of his practice, he prescribes more schedule II–IV drugs, particularly opiate and narcotic painkillers, than physicians in other specialties. Dr. Roe has been interviewed and investigated by the DEA, and believes that the DEA has sought his prescription records from the PMDP. He is distressed that the DEA may have requested information about his prescription records and his patients' protected health information without a warrant. *Id*. ¶¶ 135–172.

6 - MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE

The DEA's practice of requesting prescription records from the PDMP without a warrant violates Movants' reasonable expectations of privacy. If the DEA is permitted to obtain protected health information from the PDMP using administrative subpoenas, Movants will seriously consider whether there are steps they can take to avoid the DEA's easily accessing their prescription records and will incur costs to protect their privacy. Movants seek to intervene in this lawsuit to protect their constitutional rights to be free of unreasonable searches.

## ARGUMENT

### I.    MOVANTS ARE ENTITLED TO INTERVENE AS OF RIGHT.

Rule 24(a), governing intervention as of right, is construed "liberally in favor of potential intervenors." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001). The decision whether to allow intervention is "guided primarily by practical considerations, not technical distinctions." *Id.* (internal quotation marks omitted). The Ninth Circuit follows this rule "because '[a] liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts.'" *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (en banc) (alteration in original) (quoting *United States v. City of Los Angeles*, 288 F.3d 391, 397–98 (9th Cir. 2002)). In considering a motion to intervene, a court must accept all well-pleaded allegations in the intervenor's proposed pleadings. *Sw. Ctr. for Biological Diversity*, 268 F.3d at 819–20 ("Courts are to take all well-pleaded, nonconclusory allegations in the motion to intervene, the proposed complaint or answer in intervention, and declarations supporting the motion as true absent sham, frivolity or other objections.").

The Ninth Circuit has adopted a four-part test to resolve applications for intervention as of right:

7 - MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE

(1) the application for intervention must be timely; (2) the applicant must have a "significantly protectable" interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by the existing parties in the lawsuit.

*Id.* at 817 (quoting *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 836 (9th Cir. 1996)).

Movants meet each of these requirements.

### A.  The Motion To Intervene Is Timely.

The Ninth Circuit weighs three factors in determining timeliness: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004). "[T]he mere lapse of time, without more, is not necessarily a bar to intervention." *Id.* This Motion is timely because the litigation is still in its infancy, no party will be prejudiced by intervention at this time, and Movants have deferred intervening only long enough to ascertain whether their intervention would be necessary to protect their rights.

Movants filed this motion to intervene only 10 days after Defendants answered the Complaint. No substantive motions have been filed in this action, and no status conference has been held or briefing schedule set. Permitting Movants to intervene to protect their interests at this stage will, thus, not prejudice the State of Oregon or the DEA. *See Sierra Club v. U.S. Envtl. Prot. Agency*, 995 F.2d 1478, 1481 (9th Cir. 1993), *abrogated on other grounds by Wilderness Society*, 630 F.3d at 1180 (affirming district court's determination that application filed at outset of litigation is timely); *Tech. & Intellectual Prop. Strategies Grp. PC v. Insperity, Inc.*, No. 12-CV-03163-LHK, 2012 WL 6001098, at *5 (N.D. Cal. Nov. 29, 2012) (finding motion to intervene timely when filed "toward the very beginning of th[e] lawsuit" and before a case

8 - MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE

schedule had been set); *Zurich Am. Ins. Co. v. ACE Am. Ins. Co.*, No. CIV-S-11-0881 KJM, 2012 WL 3884695, at *2 (E.D. Cal. Sept. 6, 2012) (finding motion to intervene filed ten months after the complaint to be timely); *Siskiyou Reg'l Educ. Project v. U.S. Forest Serv.*, No. Civ. 03-3013-CO, 2003 WL 23976354, at *4 (D. Or. June 16, 2003) (finding motions to intervene filed 20 days after answer to be timely but recommending denial of motions on other grounds) (*motions to intervene granted in part by* Order Granting Motions to Intervene, docketed Aug. 19, 2003).

### B. Movants Have A Significant Fourth Amendment Interest In Ensuring That Their Prescription Records Are Not Disclosed To Law Enforcement Without A Warrant Based On Probable Cause.

Movants have a "significant protectable interest" at stake in this action. The interest test is "a practical, threshold inquiry, and [n]o specific legal or equitable interest need be established." *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (internal quotation marks omitted) (alteration in original); *see also Cnty. Of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980) ("The 'interest test' is basically a threshold one, rather than the determinative criterion for intervention . . . ."). To satisfy this factor, "an applicant must establish that the interest [asserted] is protectable under some law and that there is a relationship between the legally protected interest and the claims at issue." *Citizens for Balanced Use*, 647 F.3d at 897.

At the heart of this lawsuit are the prescription records of Movants and other physicians and patients in Oregon. Movants have a Fourth Amendment right to prevent that information from being obtained by law enforcement without a probable cause warrant. Courts have recognized the legitimate expectation of privacy in medical records under the Fourth Amendment. *See, e.g.*, *Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 550 (9th Cir. 2004)

9 - MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE

("[A]ll provision of medical services in private physicians' offices carries with it a high expectation of privacy for both physician and patient."); *State v. Skinner*, 10 So. 3d 1212, 1218 (La. 2009) ("[W]e find that the right to privacy in one's medical and prescription records is an expectation of privacy that society is prepared to recognize as reasonable. Therefore, absent the narrowly drawn exceptions permitting warrantless searches, we hold a warrant is required to conduct an investigatory search of medical and/or prescription records."); *Nat'l Assoc. of Letter Carriers, AFL-CIO v. U.S. Postal Serv.*, 604 F. Supp. 2d 665, 674–75 (S.D.N.Y. 2009) (holding that postal employees have Fourth Amendment standing to challenge Postal Service's policy of obtaining employees' personal medical information from health care providers without the employees' knowledge or consent and noting, though not deciding, that employees may have a reasonable expectation of privacy in their medical records); 1 Wayne LaFave, *Search and Seizure* § 2.7(d) & n.147 (5th ed. 2012) (citing cases recognizing reasonable expectation of privacy in medical records); *cf. Sorrell v. IMS Health Inc.*, 131 S. Ct. 2653, 2668 (2011) ("It may be assumed that, for many reasons, physicians have an interest in keeping their prescription decisions confidential."); *Whalen v. Roe*, 429 U.S. 589, 599 (1977) (discussing right to privacy in medical records under Fourteenth Amendment); *Doe v. Attorney Gen. of the U.S.,* 941 F.2d 780, 795-96 (9th Cir. 1991), *vacated on other grounds sub nom. Reno v. Doe ex rel. Lavery,* 518 U.S. 1014 (1996) (recognizing the "privacy protection afforded medical information" under the Fifth Amendment).[5]

---

[5] Some courts have held that there is no reasonable expectation of privacy in prescription records under the Fourth Amendment, relying on the "third party doctrine." *See Williams v. Commonwealth*, 213 S.W. 3d 671, 682–84 (Ky. 2006). That reasoning has come under significant criticism, *see, e.g.*, *Carter v. Commonwealth*, 358 S.W.3d 4, 8–9 (Ky. Ct. App. 2011) (explaining strong disagreement with reasoning of *Williams* and imposing reasonable suspicion

Moreover, the Oregon statute establishing the PDMP creates a legally protectable interest in the privacy of prescription records by providing persons with prescription records in the PDMP with a civil cause of action for disclosures in violation of the PDMP's privacy restrictions, including the requirement of a court order based on probable cause. Or. Rev. Stat. § 431.966(6). Movants are direct beneficiaries of the privacy protections included in Or. Rev. Stat. § 431.966, and their interest will be impaired if the probable cause requirement imposed by that statute is declared preempted by federal law. *See California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006) (finding that intervenors had a significant protectable interest when they were the intended beneficiaries of a statute that stood to be declared unconstitutional or significantly narrowed in the litigation).

Movants' allegations illustrate why the Fourth Amendment protects the privacy of their prescription records. Movants' prescription records reveal sensitive and private information about the medical conditions those prescriptions treat. *See* Intervenors' Compl. ¶¶ 46–134. Movants take schedule II–IV medications to treat serious medical conditions including gender identity disorder or gender dysphoria, anxiety and post traumatic stress disorders, frequent kidney stones, insomnia caused by restless leg syndrome, and normal aches and pains in a person whose genetic blood disorder prevents him from taking over-the-counter pain medications. The PDMP contains records identifying the specific schedule II–IV medications Movants take, the quantity dispensed, and the dates the prescriptions were filled. Information about the quantity

---

standard for requests for prescription records), and "a live (and heated) debate exists" in the courts about "whether and how third party doctrine should apply to medical records," *Kerns v. Bader*, 663 F.3d 1173, 1184 (10th Cir. 2011). Any debate about whether Movants have a reasonable expectation of privacy in their prescription records held by the PDMP is properly evaluated at the merits phase of the case, after this Motion to Intervene has been granted.

and frequency of a patient's testosterone prescriptions can reveal not only that the person is transitioning from female to male sex, but also the stage of their transition. *See* Intervenors' Compl. ¶ 110. Information about a patient's prescription for clonazepam indicates that the person suffers from a mental illness. *Id.* ¶ 89. These are deeply personal, private, and sensitive facts which can be embarrassing and stigmatizing if revealed to other people. Further, physicians have an interest in protecting the privacy of their prescription records in order to safeguard the doctor-patient relationship. *See Id.* ¶ 161. Movants therefore have significant protectable rights at stake, and they are entitled to intervene to defend those rights.

### C. The Disposition Of This Lawsuit May Irreparably Impair Movants' Ability To Protect Their Interests.

Movants are also entitled to intervene because they are individuals who would be directly and adversely affected by the outcome of this lawsuit. As the Ninth Circuit has stated, "[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." *Sw. Ctr. For Biological Diversity*, 268 F.3d at 822 (quoting Fed. R. Civ. P. 24 advisory committee's notes) (alteration in original). If the Court rules that the DEA can obtain protected health information from the PDMP merely by asserting in a subpoena that the information is "relevant or material" to an ongoing investigation, *see* 21 U.S.C. § 876(a), Movants' personally identifiable medical information will be subject to disclosure. The DEA intends to continue serving subpoenas on the PDMP "for the foreseeable future," Intervenors' Compl. ¶ 39, without providing notice to the individuals whose protected health information it seeks, and without obtaining an order from a judge. Therefore, should a DEA subpoena seek Movants' protected health information from the PDMP, Movants would have no ability to challenge the subpoena, nor any assurance that a neutral magistrate

12 - MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE

would determine the constitutionality of the DEA's request. Movants would therefore suffer

harm to their constitutional rights. Indeed, unless the DEA issues a subpoena to the PDMP for

Movants' prescription records, indicts them, and seeks to introduce the PDMP records at trial,

Movants will have no opportunity other than this lawsuit to protect their constitutional rights.

Because disclosure of their protected health information to law enforcement without a probable

cause warrant is the very harm Movants seek to prevent, Movants should be permitted to

intervene now before that issue is resolved.

### D.  The Existing Parties May Not Adequately Represent Movants' Interests In This Litigation.

Intervention should also be granted because Movants have unique, personal interests that

may not be adequately represented unless they are able to intervene. Movants' burden on this

requirement "should be treated as minimal" and is satisfied by showing that representation of

their interests by the existing parties "may be" inadequate. *Trbovich v. United Mine Workers of

America*, 404 U.S. 528, 538 n.10 (1972). When analyzing this factor, courts consider:

> (1) whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether the would-be intervenor would offer any necessary elements to the proceedings that other parties would neglect.

*Sw. Ctr. for Biological Diversity*, 268 F.3d at 822.

Movants' interests in this action are sufficiently different from Oregon's interest that

Movants may not be adequately represented if they are unable to intervene. Although a

presumption of adequacy arises when the proposed intervenor shares the same ultimate objective

in the case as a party, that presumption is rebutted where the two do not share "sufficiently

congruent interests." *Id.* at 823. That is the case here. Movants are motivated solely by their

13 - MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE

personal interests in ensuring that their protected health information is not disclosed to law enforcement without the government making a showing of probable cause to a neutral magistrate, in violation of their Fourth Amendment rights. As a sovereign state, Oregon is concerned with defending its ability to enforce its own laws and with clarifying its legal obligations in the face of the federal government's preemption claim. Oregon will advocate for its ability to enforce the requirement imposed by state law that law enforcement obtain a court order prior to requesting PDMP records, Or. Rev. Stat. § 431.966(2)(a)(C), but is not advancing the Fourth Amendment claims raised by Movants. *See* Compl. at 4. Although Oregon and Movants both want to protect personally identifiable prescription records in the PDMP from unlawful disclosure, they are driven by different, potentially conflicting interests and are asserting different claims. Indeed, Movants take no position on the preemption claim raised by Oregon and seek only to ensure that the DEA obtains prescription records in a manner that does not violate the Fourth Amendment. If Movants cannot intervene to press their Fourth Amendment claims, their interests will go largely unrepresented. *See, e.g.*, *Trbovich*, 404 U.S. at 538–39 (holding that intervention was justified where the existing party had a duty to serve two distinct interests, which were related but not identical); *Sw. Ctr. for Biological Diversity*, 268 F.3d at 823–24 ("The interests of government and the private sector may diverge. On some issues Applicants will have to express their own unique private perspectives and in essence carry forward their own interests . . . ."); *United States v. Oregon*, 839 F.2d 635, 638 (9th Cir. 1988) (holding that representation is inadequate when the existing party's "arguments will not include the constitutional deficiencies raised by the [proposed intervenors]").

There are at least two additional differences between Oregon and Movants that make intervention appropriate. First, it appears from the pleadings that Oregon may be satisfied with a determination that the DEA must obtain a court order prior to requesting PDMP records, even if that order is based on a standard less than probable cause. *See* Compl. ¶ 14. Movants, on the other hand, take the position that a probable cause warrant is compelled as a matter of federal constitutional law, and that a court order based on a "relevant or material" standard or another standard short of probable cause would violate the Fourth Amendment. *See* Intervenors' Compl. ¶ 178. Movants may therefore seek broader restrictions on the DEA's subpoena power than does the State of Oregon. *See Citizens for Balanced Use*, 647 F.3d at 899 (holding that intervention was warranted where proposed defendants-intervenors sought the "broadest possible restrictions" but the existing defendant believed that "much narrower restrictions would suffice to comply with its statutory mandate"); *California ex rel. Lockyer*, 450 F.3d at 444–45 (holding that where the government is likely to adopt a limiting construction of a statute in defending it, it will not adequately represent the interests of proposed intervenors who advance a more absolutist position).

Second, even if Oregon were to advance the Fourth Amendment arguments introduced by Movants, only Movants can personally provide the evidence and explain why they have a reasonable expectation of privacy in their prescription records and why they would be harmed by unconstitutional infringement on their privacy interests. *See* Intervenors' Compl. ¶¶ 51–172. Movants' participation, and the unique, personal perspectives Movants would provide, are critical to establishing why the DEA should not be able to obtain their constitutionally protected health information without a probable cause warrant, and would otherwise be absent from this

15 - MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE

action. *See, e.g.*, *Sw. Ctr. for Biological Diversity*, 268 F.3d at 822 (offering necessary elements to the proceedings that other parties cannot provide is a factor favoring intervention); *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983) (reversing denial of intervention where the proposed intervenor "offers a perspective which differs materially from that of the present parties"); *Coal. for a Sustainable Delta v. Carlson*, No. 1:08-CV-00397 OWW, 2008 WL 2237038, at *5 (E.D. Cal. May 29, 2008) (holding that interests are not adequately represented where proposed intervenors "claim to have a unique perspective" that is distinguishable from those of the existing parties).

Because there is "sufficient doubt about the adequacy of representation," intervention is warranted. *Trbovich*, 404 U.S. at 538. Movants "bring a point of view to the litigation not presented by either the plaintiffs or the defendants," *California ex rel. Lockyer*, 450 F.3d at 445, and will "offer important elements to the proceedings that the existing parties would likely neglect," *Sw. Ctr. for Biological Diversity*, 268 F.3d at 823. Movants have carried their burden under Fed. R. Civ. P. 24(a), and are entitled to intervene.

## II.   MOVANTS ARE ENTITLED TO PERMISSIVE INTERVENTION.

Even if Movants were not entitled to intervene as a matter of right, the Court should nonetheless allow them to intervene permissively pursuant to Federal Rule of Civil Procedure 24(b). Rule 24(b) provides, in relevant part:

> On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact. . . . In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

Fed. R. Civ. P. 24(b).

Movants satisfy the three conditions for permissive intervention under this Rule: (1) the motion is timely; (2) Movants have their own independent ground for subject matter jurisdiction; and (3) their claims and the main action have a question of law or a question of fact in common. *City of Los Angeles*, 288 F.3d at 403. First, for the reasons already set out above, *see* Part I(A), *supra*, the motion is timely. Second, there is an independent basis for subject matter jurisdiction over Movants' claims because their claims raise a federal question under the Fourth Amendment. *See* 28 U.S.C. § 1331. Third, the legal and factual issues raised by Movants' claims are similar to those in the existing action, although, as described above, *see* Part I(D), *supra*, Movants present a unique factual perspective on those questions, will make different arguments based on different constitutional principles, and seek broader relief.

Movants should be permitted to intervene in this lawsuit at this stage because their personal information and their constitutional rights are most directly affected by this lawsuit. *See City of Los Angeles*, 288 F.3d at 404 ("'[S]treamlining' the litigation . . . should not be accomplished at the risk of marginalizing those . . . who have some of the strongest interests in the outcome."); *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977) (holding that "the nature and extent of the intervenors' interest" is a relevant factor for permissive intervention). As explained above, *see* Parts I(A) & (D), *supra*, Movants' intervention would cause no delay or prejudice, and would "contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Spangler*, 552 F.2d at 1329; *Venegas v. Skaggs*, 867 F.2d 527, 530–31 (9th Cir. 1989), *aff'd*, 495 U.S. 82 (1990) (considering factors of undue delay, prejudice, judicial

economy, and adequate representation before reversing district court's denial of permissive intervention).

## <u>CONCLUSION</u>

For the foregoing reasons, Movants respectfully request that the Court grant their motion for intervention as of right pursuant to Federal Rule of Civil Procedure 24(a), or, in the alternative, their motion for permissive intervention pursuant to Rule 24(b).


Dated:  January 25, 2013                    Respectfully submitted,

                                             /s/ Ben Wizner
                                            Ben Wizner (*pro hac vice* application pending)
                                            Nathan F. Wessler (*pro hac vice*
                                               application pending)
                                            American Civil Liberties Union Foundation
                                            125 Broad Street, 18th Floor
                                            New York, NY 10004
                                            Tel.: (212) 549-2500
                                            Fax: (212) 549-2654

                                             /s/ Kevin Díaz
                                            Kevin Díaz (OSB No. 970480)
                                            ACLU Foundation of Oregon
                                            PO Box 40585
                                            Portland, OR 97240
                                            Tel.: (503) 227-6928
                                            Fax: (503) 227-227-6948

                                            *Counsel for Plaintiff-Intervenors*


18 - MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE

## **CERTIFICATE OF COMPLIANCE**

This brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains 4,923 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of authorities, signature block, and any certificates of counsel.

 Dated:  January 25, 2013

 /s/ Ben Wizner
 Ben Wizner