**S. AMANDA MARSHALL, OSB #95437**
United States Attorney
District of Oregon
**KEVIN DANIELSON, OSB #06586**
Assistant United States Attorney
kevin.c.danielson@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR  97204-2902
Telephone: (503) 727-1025
FAX: (503) 727-1117
        Attorneys for Defendant

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| OREGON PRESCRIPTION DRUG MONITORING PROGRAM, an agency of the STATE OF OREGON,<br><br>          Plaintiff,<br><br>              v.<br><br>UNITED STATES DRUG ENFORCEMENT ADMINISTRATION, an agency of the UNITED STATES DEPARTMENT OF JUSTICE,<br><br>          Defendant. | Case No.: 3:12-cv-02023-HA<br><br>DEFENDANT'S RESPONSE TO MOTION TO INTERVENE |

Defendant United States Drug Enforcement Administration, by S. Amanda Marshall, United States Attorney for the District of Oregon, through Assistant U.S. Attorney Kevin Danielson, submits this response to the motion to intervene by John Does 1-4, Dr. James Roe, and the American Civil Liberties Union of Oregon.

## Introduction

The Oregon Prescription Drug Monitoring Program ("PDMP"), a state agency in Oregon, brought this declaratory judgment action under 28 U.S.C. § 2201 to determine its rights and obligations in complying with administrative subpoenas issued by the U.S. Drug Enforcement Administration ("DEA") under 21 U.S.C. § 876.  "PDMP maintains a program for monitoring and reporting prescription drugs dispensed by Oregon pharmacies that are classified in schedules II through IV under the federal Controlled Substances Act." Dkt. 1, ¶ 1.  Oregon law "prohibits the PDMP from disclosing protected health information collected through its program to a law enforcement agency without a court order based on probable cause."  Dkt. 1, ¶ 4.

The federal statute authorizing administrative subpoenas for investigative purposes by DEA does not require the government to first obtain a court order based on probable cause.  21 U.S.C. § 876(a).  PDMP has asked this Court to determine whether the Supremacy Clause of the United States Constitution and 21 U.S.C. § 876 preempt "the state statute that requires a court order before PDMP can legally comply with a validly-issued administrative subpoena."  Dkt. 1, ¶ 14.

John Does 1-4, Dr. James Roe, and the American Civil Liberties Union of Oregon ("Movants") have moved to intervene under Fed. R. Civ. P. 24(a), as a matter of right,

and also under Fed. R. Civ. P. 24(b), as permitted by the court. In short, Movants Doe 1-4 argue that the release of medical information by PDMP based on a subpoena under 21 U.S.C. § 876 would disclose the prescription drugs they take and, necessarily, reveal their medical conditions. Movant Dr. Roe argues that he has an interest in protecting the privacy of the records in order to safeguard the doctor-patient relationship. All of the Movants contend that releasing the prescription information would violate their Fourth Amendment right to privacy regarding these medical records and that they should be allowed to intervene because their interests are separate and distinct from PDMP.

## Background

**I.      Oregon law requires pharmacies to report information about certain prescriptions to the state.**

The Oregon Health Authority was authorized to establish a "prescription monitoring program for monitoring and reporting prescription drugs dispensed by pharmacies in Oregon that are classified in schedules II and IV under the federal Controlled Substances Act." ORS § 431.962(1)(a). A pharmacy is required by law to report the following information to PDMP: (1) the name, address, and date of birth of the patient; (2) the identification of the pharmacy; (3) the identification of the practitioner who prescribed the drug; (4) the identification of the drug; (5) the date of the prescription: (6) the date the drug was dispensed; and (7) the quantity of the drug dispensed. ORS § 431.964(1)(a-g).

The Oregon Health Authority may only release the information under limited circumstances with the relevant circumstance set forth as follows:

> Pursuant to a valid court order based on probable cause and issued at the request of a federal, state, or local law enforcement agency engaged in an authorized drug-related investigation involving a person to whom the requested information pertains.

ORS § 431.966(2)(a)(C).

## II. Federal law allows DEA to issue administrative subpoenas when it is investigating possible violations of the Controlled Substances Act.

Under the Controlled Substances Act, Congress authorized the Attorney General to issue administrative subpoenas under the following circumstances.

> In any investigation relating to his functions under this subchapter with respect to controlled substances, listed chemicals, tableting machines, or encapsulating machines, the Attorney General may subpoena witnesses, compel the attendance and testimony of witnesses, and require the production of any records (including books, papers, documents and other tangible things which constitute or contain evidence) which the Attorney General finds relevant or material to the investigation.

21 U.S.C. § 876(a). This authority of the Attorney General is delegated to the DEA Administrator and then to supervisory personnel in the field. 28 C.F.R. Part 0, Subpart R, § 0.100; § 0.104, Appendix to Subpart R of Part 0 – Redelegation of Functions, § 4. Information that DEA obtains can only be released under limited circumstances and primarily to federal, state, and local officials engaged in the prosecution of cases involving controlled substances before courts and licensing boards. 28 C.F.R. Part 0, Subpart R, § 0.103.

## III. Previously, U.S. Magistrate Judge Papak ruled that PDMP must comply with an administrative subpoena from DEA without a court order or showing of probable cause.

In August of 2012, DEA brought an action to enforce an administrative subpoena under 21 U.S.C. § 876(a) when PDMP would not comply with a DEA

Page - 4    **Defendant's Response to Motion to Intervene**
*Oregon Prescription Drug Monitoring Program v. Drug Enforcement Admin.,*
3:12-cv-02023-HA

subpoena which sought a physician's profile for all schedule II-V drugs prescribed during a specific time period. *United States v. State of Oregon Prescription Drug Monitoring Program*, No. 3:12-mc-00298, Dist. of Oregon, Dkt. 1, ¶ 3. DEA filed the action after PDMP informed the agency that it would not comply with DEA's subpoena because ORS § 431.966(2)(a)(C) prohibited the production of the materials without a court order and a showing of probable cause. *Id.*, ¶ 4. United States Magistrate Judge Papak ruled that DEA did not require a court order based on probable cause and ordered as follows:

> That Oregon Revised Statute, Section 431.966(2)(a)(C) is preempted by Title 21 United States Code, Section 876, to the extent that the state statute requires a court order or showing of probable cause before compliance with an administrative subpoena from a federal agency; and
> That the State of Oregon Prescription Drug Monitoring Program shall promptly comply with all federal administrative subpoenas henceforth.

*Id.,* Dkt. 6, p.1.

## Argument

**I.    Under 21 U.S.C. § 876(a), DEA has the authority to issue a subpoena for medical records that are relevant or material to the investigation of violations of the Controlled Substances Act.**

Congress gave the Attorney General broad subpoena power to obtain documents that are material or relevant to the investigation of violations of the Controlled Substances Act. 21 U.S.C. 876(a). Those investigations include DEA's enforcement of both regulatory and criminal laws related to controlled substances. *United States v. Mountain States Telephone & Telegraph Co., Inc.*, 516 F. Supp. 225, 229 (D. Wyo. 1981). The information subpoenaed by DEA only needs to be relevant to an

investigation or a possible violation of the drug laws and may even be used to dissipate suspicion of a crime. *United States v. Golden Valley Electric Assoc.*, 689 F.3d 1108, 1114 (9th Cir. 2012).

In the context of an administrative subpoena under 21 U.S.C. § 876(a), the Fourth Amendment's restrictions are limited. *Golden Valley Electric*, 689 F.3d at 1115. The Court has described the scope of protection as follows:

> [I]t is sufficient [for Fourth Amendment purposes] if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant. The gist of the protection is in the requirement, expressed in terms, that the disclosure shall not be unreasonable.

*Id.* at 1115 (quoting *United States v. Morton Salt Co.*, 338 U.S 632, 652-53 (1950)). Moreover, the "Supreme Court has refused to require that an agency have probable cause to justify issuance of a subpoena." *Id.*, citing *United States v. Powell*, 379 U.S. 48, 57 (1964); *Oklahoma Press Pub. Co. v. Walling*, 327 U.S. 188, 215-16. Accordingly, DEA has the power to issue an administrative subpoena for relevant or material medical records under 21 U.S.C.§ 876(a), without probable cause, to investigate possible violations of the Controlled Substances Act.

II.     **Movants have no right to intervene under Fed. R. Civ. P. 24(a) because they do not have a protected privacy right in the prescription records.**

Upon a timely motion, a court must permit anyone to intervene in a case who: (1) "is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protects its interest, unless existing parties adequately represent that interest."

Fed. R. Civ. P. 24(a)(1-2). Here, Movants argue they should be allowed to intervene under Rule 24(a)(2) because they have a protected privacy right in the prescription records.

In analyzing a motion under Rule 24(a)(2), courts apply a four-part test: "(1) the intervention application is timely; (2) the applicant has a significant protectable interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action, may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest." *Citizens for Balanced Use v. Montana Wilderness Association,* 647 F.3d 893, 897 (9th Cir. 2011) (quoting *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006)). The applicant has the burden to establish these elements but the requirements are broadly interpreted in favor of intervention. *Id.*

  **A.** **The motion to intervene was timely**.

DEA agrees the motion to intervene was timely.

  **B.** **The Movants do not have a significant protectable interest in the case because they do not have a constitutionally protected privacy interest in the prescription medical records.**

Movants, as John Does 1-4 and Dr. James Roe, argue that they have a significant protectable interest under the Fourth Amendment to prevent the prescription medical information obtained by PDMP from being obtained by law enforcement without probable cause. Contrary to Movants' argument, they have no protected privacy interest in the records.

Page - 7  **Defendant's Response to Motion to Intervene**
      *Oregon Prescription Drug Monitoring Program v. Drug Enforcement Admin.,*
      3:12-cv-02023-HA

In *Whalen v. Roe*, 429 U.S. 589 (1977), physicians and patients challenged the constitutionality of a New York law that required the state be provided with a copy of every prescription for all schedule II drugs. *Id*. at 593. The completed prescription form identified the prescribing physician, the pharmacy, the drug and dosage, and the name, address, and age of the patient. *Id*. The information was to be recorded in a centralized computer file by the New York State Department of Health. *Id*. The patients argued that release of the information violated their right of privacy. *Id*. at 599. The physicians argued that release of the impaired their right to practice medicine free of unwarranted state interference. *Id.* at 604.

In reaching its decision, the Court stated as follows:

> Nevertheless, disclosures of private medical information to doctors, to hospital personnel, to insurance companies, and to public health agencies are often an essential part of modern medical practice even when the disclosure may reflect unfavorably on the character of the patient. Requiring such disclosures to representatives of the State having responsibility for the health of the community does not automatically amount to an impermissible invasion of privacy.

*Whalen*, 429 U.S. at 602. The Court concluded that the law mandating release of the prescription information law did not violate any constitutional right of the patients or doctors. *Id*. at 603-05.

Movants' reliance on certain case law does not support their argument that they have a protected expectation of privacy in all medical records. Movants cite to *Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 550 (9th Cir. 2004) for the proposition that courts "have recognized the legitimate expectation of privacy in medical records." Dkt. 7-1, p.

Page - 8    **Defendant's Response to Motion to Intervene**
*Oregon Prescription Drug Monitoring Program v. Drug Enforcement Admin.,*
3:12-cv-02023-HA

15. However, in *Tucson Woman's Clinic Eden*, the plaintiffs were physicians who challenged the constitutionality of a state statutory and regulatory scheme for the licensing and regulation of abortion clinics. The Arizona law required doctors who performed abortions to allow warrantless inspections of their offices and access to patient records. 379 F.3d at 537. The court balanced five factors to determine whether the government's interest in obtaining the medical records outweighed the individual's privacy interest: "(1) the type of information requested, (2) the potential for harm in any subsequent non-consensual disclosure; (3) the adequacy of safeguards to prevent unauthorized disclosure, (4) the degree of need for access, and (5) whether there is an express statutory mandate, articulated public policy, or other public interest militating toward access." *Id.* at 551. Because the clinic provided a service that was grounded in the constitutionally protected right to an abortion, the Court found that the law allowing a warrantless search was unconstitutional and that the medical records were protected. *Id*. at 551, 553. The facts of *Tucson Woman's Clinic* involved the constitutionally protected privacy rights related to abortion and do not establish that the Movants have a protected privacy interest in the PDMP records.

In *Seaton v. Mayberg*, 610 F.3d 530, 539 (9th Cir. 2010), the Ninth Circuit applied the five-part balancing test of *Tucson Women's Clinic* to determine whether a prisoner had a constitutionally protected right of privacy to his medical information. In *Seaton*, a state prisoner, who was convicted of sexual offenses, brought a civil action claiming that his constitutional right to privacy in his medical records was violated when

Page - 9    **Defendant's Response to Motion to Intervene**
*Oregon Prescription Drug Monitoring Program v. Drug Enforcement Admin.,*
3:12-cv-02023-HA

those records were examined by psychologists to determine whether he should be civilly committed following his release from prison. *Id*. at 532-33.

The court in *Seaton* balanced the factors and found the prisoner had no right of privacy in his medical records when they were being used to determine if he was likely to continue as a sexual predator. 610 F.3d at 541. The Court made clear that there is no absolute right to privacy of medical records and stated that "[o]ne who goes to a physician in order to obtain medical benefit to himself or his family has substantial privacy interests that may or may not be constitutionally protected." *Id*. at 541. See *In re Grand Jury Proceedings v. United States*, 801 F. 2d 1164, 1170 (9th Cir. 1986) ("a person possesses no reasonable expectation that his medical history will remain completely confidential.").

Here, a balancing of the five factors establishes that DEA's interest in obtaining the prescription medical records outweighs the privacy interest of the Movants for the following reasons: (1) the information is limited only to prescription drugs and not the patient's medical records; (2) the potential for harm in any subsequent non-consensual disclosure is minimal because DEA is only allowed to release the information under limited circumstances and primarily to federal, state, and local officials engaged in the prosecution of cases involving controlled substances before courts and licensing boards; (3) the information is adequately safeguarded because it is being held by DEA; (4) the information is needed to investigate violations of the Controlled Substances Act; and (5)

Page - 10    **Defendant's Response to Motion to Intervene**
*Oregon Prescription Drug Monitoring Program v. Drug Enforcement Admin.,*
3:12-cv-02023-HA

DEA has express statutory to investigate violations of the Controlled Substances Act under 21 U.S.C. § 876.

Importantly, the Supreme Court has ruled that there is no constitutional right of privacy to medical information related to prescriptions. *Whalen*, 429 U.S. at 603-05. The Ninth Circuit recently summarized the holding in *Whalen* when it stated: "The holding in *Whalen* was that the New York law did not violate any constitutional rights of the patient whose prescriptions were revealed to the government." *Seaton*, 610 F.3d at 537. Because Movants do not have a constitutionally protected interest in their prescription records, they do not have a significant protectable interest in this case and have no right to intervene under Rule 24(a)(2).

      **C.**    **The disposition of this action will not impair or impede Movants' claim that they have a right of privacy to their prescription records because they can challenge the statute in state court.**

State law authorized PDMP to collect the information regarding medical prescriptions. ORS § 431.964(1). If Movants believe they have a constitutionally protected right of privacy in this information, they may have the right to challenge the statute in state court. Therefore, if this Court denies Movants the right to intervene, it will not impair or impede their ability to assert their privacy claim in another forum. Accordingly, the Movants have no right to intervene under Rule 24(a)(2).

      **D.**    **The existing parties will adequately represent the only issue before this Court; whether the Supremacy Clause preempts state law.**

PDMP brought this action to determine whether the Supremacy Clause preempts state law. Movants' reasons for intervening have nothing to do with the Supremacy

*Oregon Prescription Drug Monitoring Program v. Drug Enforcement Admin.*,
3:12-cv-02023-HA

Clause but are based on their privacy interests, an issue not relevant to this case. Accordingly, the Movants have no right to intervene under Rule 24(a)(2).

## II. Movants are not entitled to permissive intervention because their claim does not share a common question of law or fact with the main action.

Anyone may move for permissive intervention who "has a claim or defense that shares with the main action a common question or law or fact." Fed. R. Civ. P. 24(b)(1)(B). "In exercising its discretion, the court, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

In deciding whether to permit a party to intervene under Rule 24(b), courts consider numerous factors, including the following:

> the nature and extent of the intervenors' interest, their standing to raise relevant legal issues, the legal position they seek to advance, and its probable relation to the merits of the case [,] whether changes have occurred in the litigation so that intervention that was once denied should be reexamined, whether the intervenors' interests are adequately represented by other parties, whether intervention will prolong or unduly delay the litigation, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and the just and equitable adjudication of the legal questions presented.

*Perry v. Schwarzenegger*, 630 F.3d 898, 905 (9th Cir. 2011) (quoting *Spangler v. Pasadena Bd. of Educ.* 552 F.2d 1326, 1329 (9th Cir. 1977).

Here, Movants' privacy claim has nothing to do with whether the Supremacy Clause preempts state law and so there is no common question of fact or law. In addition, because there are no specific subpoenas at issue in this case, Movants are not

targets of any subpoena and their privacy rights are not before this Court. Moreover, the Supreme Court has decided that there is no constitutionally protected right of privacy to information related to prescriptions. *Whalen*, 429 U.S. at 602-05. Accordingly, the Movants should not be permitted to intervene under Rule 24(b)(1)(B).

## Conclusion

Movants' motion to intervene should be denied.

Dated this 15th day of February 2013.

                                                Respectfully submitted,

                                                S. AMANDA MARSHALL
                                                United States Attorney
                                                District of Oregon

                                                */s/ Kevin Danielson*
                                                KEVIN DANIELSON
                                                Assistant United States Attorney
                                                Attorney for Defendant