Kevin Díaz, OSB No. 970480
Email: kdiaz@aclu-or.org
**ACLU Foundation of Oregon**
PO Box 40585
Portland, OR 97240
Tel.: (503) 227-6928; Fax: (503) 227-6948

Nathan Freed Wessler (*pro hac vice*)
Email: nwessler@aclu.org
Ben Wizner (*pro hac vice*)
Email: bwizner@aclu.org
**American Civil Liberties Union Foundation**
125 Broad Street, 18th Floor
New York, NY 10004
Tel.: (212) 549-2500; Fax: (212) 549-2654

Attorneys for the Plaintiffs-Intervenors

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **OREGON PRESCRIPTION DRUG MONITORING PROGRAM**, an agency of the **STATE OF OREGON**, <br><br> Plaintiff, <br><br> v. <br><br> **UNITED STATES DRUG ENFORCEMENT ADMINISTRATION**, an agency of the **UNITED STATES DEPARTMENT OF JUSTICE**, <br><br> Defendant. | Case No.: 3:12-cv-02023-HA <br><br> **REPLY MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE** <br><br> Oral Argument Requested |

**JOHN DOE 1, JOHN DOE 2, JOHN DOE 3, JOHN DOE 4, DR. JAMES ROE, and ACLU OF OREGON,**

        Plaintiffs-Intervenors,

                v.

**UNITED STATES DRUG ENFORCEMENT ADMINISTRATION**, an agency of the **UNITED STATES DEPARTMENT OF JUSTICE,**

        Defendant in Intervention.

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...........................................................................................................ii

INTRODUCTION .......................................................................................................................1

ARGUMENT ...............................................................................................................................1

   I.     MOVANTS ARE ENTITLED TO INTERVENE AS OF RIGHT. .....................................1

       A.    Movants Have Significant Protectable Interests Under the Fourth Amendment and Oregon Law In Ensuring That Their Prescription Records Are Not Disclosed To Law Enforcement Without A Warrant Based On Probable Cause. ..................................................1

           1.     Movants' Protectable Interest Under the Fourth Amendment. ...................................3

              a.     Movants have a significant protectable interest under the Fourth Amendment.......3

              b.     Defendant's discussion of the right to informational privacy does not undermine Movants' entitlement to intervene. ................................................................................7

              c.     Movants' significant protectable interest under the Fourth Amendment is related to the claims at issue in this litigation..............................................................................9

           2.     Movants' Protectable Interest Created by State Statute...............................................10

       B.    The Disposition Of This Lawsuit Without Movants' Participation Will Impair Movants' Ability To Protect Their Interests. .............................................................................12

       C.    The Existing Parties Will Not Adequately Represent Movants' Interests In This Litigation.....................................................................................................................................12

   II.    MOVANTS ARE ENTITLED TO PERMISSIVE INTERVENTION. ..............................14

CONCLUSION...........................................................................................................................15

CERTIFICATE OF COMPLIANCE.............................................................................................17

## TABLE OF AUTHORITIES

**Cases**

*Andrews v. Triple R. Distrib., LLC*, No. CV 12-346-TUC-HCE, 2012 WL 3779932 (D. Ariz. Aug. 31, 2012) ......................................................................................................................... 14

*Arizona v. Gant*, 556 U.S. 332 (2009) ........................................................................................... 3

*Bureerong v. Uvawas*, 167 F.R.D. 83 (C.D. Cal. 1996) ............................................................... 14

*Cal. Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc.*, No. C 07-3747 PJH, 2008 WL 283798 (N.D. Cal. Feb. 1, 2008)................................................................................................................. 15

*Cal. Dump Truck Owners Ass'n v. Nichols*, 275 F.R.D. 303 (E.D. Cal. 2011) ....................... 1, 11

*California ex rel. Lockyer v. United States*, 450 F.3d 436 (9th Cir. 2006)............................. 10, 11

*Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893 (9th Cir. 2011)........... 1, 9

*Doe v. Attorney Gen. of the U.S.*, 941 F.2d 780 (9th Cir. 1991)..................................................... 7

*Doe v. Se. Pa. Transp. Auth.*, 72 F.3d 1133 (3rd Cir. 1995)........................................................... 7

*Douglas v. Dobbs*, 419 F.3d 1097 (10th Cir. 2005)............................................................... 5, 7, 8

*Ferguson v. City of Charleston*, 532 U.S. 67 (2001) ................................................................. 5, 8

*Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489 (9th Cir. 1995)....................... 10

*Greene v. United States*, 996 F.2d 973 (9th Cir. 1993) ............................................................... 10

*In re Grand Jury Proceedings*, 801 F.2d 1164 (9th Cir. 1986) ..................................................... 9

*Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094 (9th Cir. 2002) ................................... 14, 15

*Or. Envtl. Council v. Or. Dep't of Envtl. Quality*, 775 F. Supp. 353 (D. Or. 1991)..................... 14

*Seaton v. Mayberg*, 610 F.3d 530 (9th Cir. 2010) ......................................................................... 7

*Sierra Club v. U.S. Envtl. Prot. Agency*, 995 F.2d 1478 (9th Cir. 1993)....................................... 2

*Silver v. Babbit,* 166 F.R.D. 418 (D. Ariz. 1994) ........................................................................ 14

*Smith v. Maryland*, 442 U.S. 735 (1979) ....................................................................................... 3

*Stallworth v. Monsanto Co.*, 558 F.2d 257 (5th Cir. 1977) ......................................................... 14

*State v. Skinner*, 10 So. 3d 1212 (La. 2009) ....................................................................... 5, 8

*Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810 (9th Cir. 2001) ............................. 2, 4, 13

*Tucson Woman's Clinic v. Eden*, 379 F.3d 531 (9th Cir. 2004) ........................................ 5, 7, 8, 9

*United States v. Golden Valley Electric Ass'n*, 689 F.3d 1108 (9th Cir. 2012) ........................ 3, 6

*United States v. Oregon*, 839 F.2d 635 (9th Cir. 1988) ................................................................ 13

*United States v. Plunk*, 153 F.3d 1011 (9th Cir. 1998) .................................................................. 3

*Whalen v. Roe*, 429 U.S. 589 (1977) ............................................................................... 5, 7, 8, 15

**Statutes and Rules**

21 U.S.C. § 876 ...................................................................................................................... 10, 12

Ala. Code § 20-2-214(5) ................................................................................................................ 5

Alaska Stat. § 17.30.200(d)(5) ...................................................................................................... 5

Ark. Code Ann. § 20-7-606(b)(2)(A) ........................................................................................... 5

Fed. R. Civ. P. 24(b) .................................................................................................................... 14

Ga. Code Ann. § 16-13-60(c)(3) ................................................................................................... 5

Iowa Code § 124.553(1)(c) ........................................................................................................... 5

Minn. Stat. § 152.126(6)(b)(7) ..................................................................................................... 5

Mont. Code Ann. §§ 37-7-1506(1)(e), 46-4-301(3) ..................................................................... 5

N.H. Rev. Stat. Ann. § 318-B:35(I)(b)(3) ..................................................................................... 5

Or. Admin. R. 410-121-4020(24) .................................................................................................. 6

Or. Rev. Stat. § 431.966 .................................................................................................. 5, 6, 10, 11

Vt. Stat. Ann. tit. 18, § 4284 ......................................................................................................... 5

**Other Authorities**

Or. Health Auth., Data Requests, http://www.orpdmp.com/data-requests/ .................................. 6

Or. Health Auth., Frequently Asked Questions, http://www.orpdmp.com/faq.html ..................... 6

iii – REPLY MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE

Or. Health Auth., Law Enforcement, http://www.orpdmp.com/law-enforcement/ ....................... 6

Or. Health Auth., Unauthorized Access/Improper Disclosure,
    http://www.orpdmp.com/unauthorized-access/improper-disclosure.html ................................ 6

## INTRODUCTION

Plaintiffs-Intervenors John Does 1–4, Dr. James Roe, and the ACLU or Oregon ("Movants") seek to intervene in this suit to protect their rights under the Fourth Amendment to be free from unreasonable searches. In opposing intervention, Defendant Drug Enforcement Administration ("Defendant" or "DEA") devotes virtually its entire argument to discussion of the right to informational privacy under the Due Process Clause, but that discussion is wholly inapposite to the issue before the Court, as Movants have not even asserted a due process claim. The DEA presents no relevant argument in opposition to the Motion to Intervene. As more fully explained in Movants' Memorandum of Law in Support of Motion to Intervene, ECF No. 7-1 ("Intervention Brief"), Movants are entitled to intervene because (1) they have significant protectable interests under the Fourth Amendment and state law that are related to the claims at issue in this litigation, (2) disposition of this lawsuit will impair their ability to protect those rights, and (3) Movants' unique, personal interests will not be adequately represented by the existing parties.

## ARGUMENT

### I.   MOVANTS ARE ENTITLED TO INTERVENE AS OF RIGHT.

#### A.   Movants Have Significant Protectable Interests Under the Fourth Amendment and Oregon Law In Ensuring That Their Prescription Records Are Not Disclosed To Law Enforcement Without A Warrant Based On Probable Cause.

To demonstrate a "significant protectable interest," Movants need only assert an interest protected by law and establish that there is a relationship between that interest and the claims at issue in the suit. *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011); *Cal. Dump Truck Owners Ass'n v. Nichols*, 275 F.R.D. 303, 306 (E.D. Cal. 2011). The Court need not resolve the ultimate merits question—whether the Fourth Amendment

requires the DEA to secure a warrant before requesting prescription records from the PDMP, or whether some exception to the warrant requirement applies—at this stage of the case. *See Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 821 n.2 (9th Cir. 2001) (in assessing a motion to intervene, declining to "take any position on the merits of [an] issue" that is "properly a subject of the underlying litigation"); *Sierra Club v. U.S. Envtl. Prot. Agency*, 995 F.2d 1478, 1483 (9th Cir. 1993) ("[T]he issue is participation in a lawsuit, not the outcome . . . ."). Indeed, the Court need not even decide that Movants have a reasonable expectation of privacy in their prescription records under the Fourth Amendment. Rather, the Court need only determine that Movants have asserted a legally protectable interest that is related to the claims at issue in this litigation; ultimate resolution of the merits of their claim is properly addressed after intervention has been granted.

Movants identified two interests in their Intervention Brief: a Fourth Amendment interest in preventing their confidential prescription records from being obtained by law enforcement without a probable cause warrant, and a statutory interest in the same created by the enforceable privacy protections in the PDMP's organic statute. Intervention Br. 9–11. Defendant's Response to Motion to Intervene, ECF No. 14 ("Response Brief"), provides no argument for why these do not constitute significant protectable interests. Rather, the DEA invokes the five-factor balancing test used in cases addressing the right to informational privacy under the Due Process Clauses of the Fifth and Fourteenth Amendments. Asserting that under this test DEA access to PDMP records does not violate Movants' right to informational privacy, the DEA concludes that Movants have no significant protectable interest at stake. Resp. Br. 8–11. However, Movants do not rely on the right to informational privacy as a basis for their motion to intervene, nor do they

2 – REPLY MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE

raise an informational privacy claim in their complaint in intervention. The DEA's argument is at best tangential to the issue before the Court and is unresponsive to Movants' opening brief.

**1.  Movants' Protectable Interest Under the Fourth Amendment.**

       **a.  Movants have a significant protectable interest under the Fourth Amendment.**

Movants seek to intervene in order to protect their reasonable expectation of privacy in their confidential prescription records. This interest is protected by the Fourth Amendment.

Under the Fourth Amendment, where an individual has a reasonable expectation of privacy in an item or location to be searched, the search is "per se unreasonable" unless conducted pursuant to a warrant. *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (internal quotation marks omitted). Only if there is no reasonable expectation of privacy, or if one of the "few specifically established and well-delineated exceptions" to the warrant requirement applies, *id.* (internal quotation marks omitted), may government officials conduct a warrantless search, including a search pursuant to an administrative subpoena. *See United States v. Golden Valley Electric Ass'n*, 689 F.3d 1108, 1116 (9th Cir. 2012) (permitting use of administrative subpoena after determining that targets of search had no reasonable expectation of privacy); *United States v. Plunk*, 153 F.3d 1011, 1020 (9th Cir. 1998) (same), *amended by* 161 F.3d 1195 (9th Cir. 1998), *abrogated on other grounds by United States v. Hankey*, 203 F.3d 1160, 1169 & n.7 (9th Cir. 2000).

To establish a reasonable expectation of privacy under the Fourth Amendment, the litigant must demonstrate that he or she has an actual expectation of privacy, and that the expectation of privacy is "one that society is prepared to recognize as reasonable." *Smith v. Maryland*, 442 U.S. 735, 740 (1979) (internal quotation marks omitted). Here, the Complaint in

Intervention demonstrates that Movants have an actual expectation of privacy in their prescription records held in the PDMP.[1] Movants John Does 1–4's prescription records reveal sensitive and private information about the medical conditions those prescriptions treat, which include gender identity disorder or gender dysphoria, anxiety and post-traumatic stress disorders, frequent kidney stones, persistent insomnia, and recurring pain. *See* Intervenors' Compl., ECF No. 7-2, ¶¶ 46–134. Information contained in the PDMP about Movants' prescriptions reveals potentially embarrassing or stigmatizing details of their diagnoses and the nature and stage of their treatment. Intervention Br. 11–12; Intervenors' Compl. ¶¶ 89, 110. Movant Dr. James Roe's prescription records reveal confidential information about his treatment of patients and the doctor-patient relationship. Intervenors' Compl. ¶ 172. Each Movant has an actual expectation of privacy in those records, as detailed in the Complaint in Intervention. *Id.* ¶¶ 49 ("Plaintiffs-Intervenors consider their prescription records and the sensitive medical information that they reveal to be private and confidential."), 60–62, 83, 89, 105, 108, 130, 172.

Further, society recognizes the expectation of privacy in prescription and other medical records as reasonable. Intervention Br. 9–10. Prescription records reveal intimate, private, and potentially stigmatizing details about a patient's health, including the patient's underlying medical condition, the severity of the condition, and the course of treatment prescribed by the treating physician. For that reason, as with other medical records, they are widely considered private—and reasonably so. As the Supreme Court has explained in an analogous context, "[t]he

---

[1] In ruling on a motion to intervene, "[c]ourts are to take all well-pleaded, nonconclusory allegations in the motion to intervene, the proposed complaint or answer in intervention, and declarations supporting the motion as true absent sham, frivolity or other objections." *Sw. Ctr. for Biological Diversity*, 268 F.3d at 820.

reasonable expectation of privacy enjoyed by the typical patient undergoing diagnostic tests in a hospital is that the results of those tests will not be shared with nonmedical personnel without her consent." *Ferguson v. City of Charleston*, 532 U.S. 67, 78 (2001); *see also id.* at 78 n.14 ("[W]e have previously recognized that an intrusion on that expectation may have adverse consequences because it may deter patients from receiving needed medical care." (citing *Whalen v. Roe*, 429 U.S. 589, 599–600 (1977))). Similarly, the Ninth Circuit has held that a warrant is required for law enforcement to search medical records held by an abortion clinic, in part because "all provision of medical services in private physicians' offices carries with it a high expectation of privacy for both physician and patient." *Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 550 (9th Cir. 2004). Other courts have required a warrant for searches of prescription records specifically, *e.g.*, *State v. Skinner*, 10 So. 3d 1212, 1218 (La. 2009), or have recognized a Fourth Amendment privacy interest in prescription records but have not needed to decide whether the warrant requirement applies, *Douglas v. Dobbs*, 419 F.3d 1097, 1102–03 (10th Cir. 2005).

Moreover, the State of Oregon recognized and reinforced the legitimacy of this privacy interest when it explicitly included the warrant requirement in the PDMP statute. *See* Or. Rev. Stat. § 431.966(2)(a)(C). A number of other states have similarly recognized the legitimate expectation of privacy in prescription records by requiring law enforcement to secure a warrant or otherwise demonstrate probable cause before obtaining records from those states' own prescription drug monitoring programs. Ala. Code § 20-2-214(5); Alaska Stat. § 17.30.200(d)(5); Ark. Code Ann. § 20-7-606(b)(2)(A); Ga. Code Ann. § 16-13-60(c)(3); Iowa Code § 124.553(1)(c); Minn. Stat. § 152.126(6)(b)(7); Mont. Code Ann. §§ 37-7-1506(1)(e), 46-4-301(3); N.H. Rev. Stat. Ann. § 318-B:35(I)(b)(3); *see also* Vt. Stat. Ann. tit. 18, § 4284

5 – REPLY MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE

(permitting no access to prescription records in state prescription monitoring system by law enforcement directly or on request).

Additionally, Oregon's warrant requirement not only reflects and evidences the reasonable expectation of privacy in prescription records, it helps shape it. The PDMP's organic statute, Or. Rev. Stat. § 431.966(2)(a)(C), its implementing regulations, Or. Admin. R. 410-121-4020(24), and a host of materials provided to patients and doctors and available on the PDMP's website explicitly guarantee the privacy of prescription records held by the PDMP and represent that they will not be provided to law enforcement without production of a valid court order based on probable cause. *See, e.g.*, Or. Health Auth., Unauthorized Access/Improper Disclosure, http://www.orpdmp.com/unauthorized-access/improper-disclosure.html; Or. Health Auth., Data Requests, http://www.orpdmp.com/data-requests/; Or. Health Auth., Law Enforcement, http://www.orpdmp.com/law-enforcement/; Or. Health Auth., Frequently Asked Questions, http://www.orpdmp.com/faq.html. The Ninth Circuit has explained that "[d]epending on the circumstances or the type of information, a company's guarantee to its customers that it will safeguard the privacy of their records might suffice to justify resisting an administrative subpoena." *Golden Valley Electric Ass'n*, 689 F.3d at 1116. Here, the entity holding the records is not a company, but the State of Oregon. The State has explicitly guaranteed to Oregon residents receiving prescriptions for Schedule II–IV drugs that information about their prescriptions will not be released to law enforcement except pursuant to a probable cause warrant. Even if there were not a broader societal expectation of privacy in prescription records, the State of Oregon has created one here.

The cases recognizing a reasonable expectation of privacy in prescription and medical records, as well as the practices of Oregon and other states in protecting that information from

warrantless law enforcement access, reinforce that Movants have a significant protectable

interest under the Fourth Amendment in the privacy of their prescription records.

> **b. Defendant's discussion of the right to informational privacy does not undermine Movants' entitlement to intervene.**

Cases cited by Movants that involve an informational privacy or other non-Fourth

Amendment claim, including the cases discussed by the DEA, Resp. Br. 8–10 (citing *Whalen v.*

*Roe*, 429 U.S. 589 (1977), *Tucson Woman's Clinic v. Eden*, 379 F.3d 531 (9th Cir. 2004), and

*Seaton v. Mayberg*, 610 F.3d 530 (9th Cir. 2010) (not cited by Movants)), are relevant to the

Fourth Amendment claim only inasmuch as they recognize a privacy interest in prescription

records or other medical records. *See Whalen*, 429 U.S. at 599–600 (recognizing privacy interest

in prescription records, but concluding that no constitutional violation had occurred); *Tucson*

*Woman's Clinic*, 379 F.3d at 551 (citing *Whalen* for proposition that "[i]ndividuals have a

constitutionally protected interest in avoiding 'disclosure of personal matters,' including medical

information"); *Seaton*, 610 F.3d at 537–39 (discussing scope of "constitutional right to privacy

of medical information" and noting that the "[c]onfidentiality of communications to physicians .

. . exist[s] for a purpose—enabling patients to disclose what may be highly personal or

embarrassing conditions to physicians so that they may obtain treatment, serving both their

private interest in and the public interest in their health").[2] Movants cite *Whalen* and related

---

[2] *See also, e.g.*, *Douglas*, 419 F.3d at 1102 ("[I]t seems clear that privacy in prescription records falls within a protected 'zone of privacy' and is thus protected [under the 14th Amendment] as a personal right either 'fundamental' to or 'implicit in the concept of ordered liberty.'"); *Doe v. Se. Pa. Transp. Auth.*, 72 F.3d 1133, 1138 (3rd Cir. 1995) ("An individual using prescription drugs has a right to expect that such information will customarily remain private."); *Doe v. Attorney Gen. of the U.S.*, 941 F.2d 780, 795–96 (9th Cir. 1991) (recognizing the "privacy protection afforded medical information" under the Fifth Amendment), *vacated on other grounds sub nom. Reno v. Doe ex rel. Lavery*, 518 U.S. 1014 (1996).

7 – REPLY MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE

cases because the predicate question there—whether there is a right to privacy in prescription records and medical information—informs the determination under the Fourth Amendment of whether society is prepared to recognize the expectation of privacy in prescription records as reasonable. *See Ferguson*, 532 U.S. at 78 & n.14 (citing *Whalen*, 429 U.S. at 599–600, in Fourth Amendment case in support of finding that patients have a reasonable expectation of privacy in certain medical records); *Douglas*, 419 F.3d at 1101–03 (looking to right-to-privacy cases decided under the Due Process Clause to assess whether there is a legitimate expectation of privacy in medical records under the Fourth Amendment). However, the ultimate conclusion reached in those cases regarding the extent of the Fifth or Fourteenth Amendment informational privacy right is not relevant to the legal issues presented in this case. The portions of those opinions cited by the DEA do not purport to determine whether the expectation of privacy in prescription records is objectively reasonable for Fourth Amendment purposes.

The Ninth Circuit's right-to-informational-privacy cases hold that there is a privacy interest in medical information, but that under the Fifth and Fourteenth Amendments that right is conditional. *Tucson Women's Clinic*, 379 F.3d at 551. They then apply a five-factor balancing test to determine whether the government's need for access to the private information outweighs the plaintiff's recognized privacy interest. *Id.* Whether those cases conclude that the government's need for access to medical information outweighs the recognized privacy interest in the information is simply irrelevant to the Fourth Amendment question at issue here, because the reasonable-expectation-of-privacy test is wholly distinct. *See Skinner*, 10 So. 3d at 1218 ("[W]e hold a warrant is required to conduct an investigatory search of medical and/or prescription records. We are not prepared to extend *Whalen*, which balanced the individual's privacy interest against the state's reasonable exercise of its regulatory power, to . . . [uphold]

8 – REPLY MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE

warrantless searches and seizures of [state] citizens' medical and pharmacy records for criminal investigative purposes.").

The DEA does not reckon with the cases cited by Movants that *do* hold there to be a reasonable expectation of privacy in prescription records or other medical information under the Fourth Amendment.[3] *See* Intervenors' Br. 9–10. In fact, the DEA cites *Tucson Woman's Clinic* for its discussion of the right to informational privacy in medical records, but ignores the portion of the opinion that, as noted above, finds a state statute authorizing warrantless searches of abortion clinics to violate the Fourth Amendment, in part because "all provision of medical services in private physicians' offices carries with it a high expectation of privacy for both physician and patient." *Tucson Woman's Clinic*, 379 F.3d at 550. Movants have a significant protectable interest in the privacy of their prescription records under the Fourth Amendment, and the DEA makes no argument to the contrary.

### c. Movants' significant protectable interest under the Fourth Amendment is related to the claims at issue in this litigation.

There is also "a relationship between the legally protected interest and the claims at issue" in this litigation. *Citizens for Balanced Use*, 647 F.3d at 897. Movants' Fourth Amendment interest is predicated on the requirement that law enforcement secure a probable cause warrant before requesting and obtaining confidential prescription records from the PDMP. The existing claim at issue between the PDMP and the DEA also concerns whether the DEA is required to obtain a probable cause warrant before requesting and obtaining prescription records

---

[3] The DEA also cites to *In re Grand Jury Proceedings*, 801 F.2d 1164, 1170 (9th Cir. 1986) (per curiam), but that case did not involve a Fourth Amendment claim. It primarily turned on the question whether the Fifth Amendment privilege against self-incrimination or other testimonial privilege protected records from disclosure pursuant to a grand jury subpoena.

9 – REPLY MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE

from the PDMP. If the Court determines that the warrant requirement imposed by state law is preempted by the federal subpoena statute, 21 U.S.C. § 876, Movants "will suffer a practical impairment of [their] interests as a result of the pending litigation," *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006), because the State of Oregon will begin honoring the DEA's warrantless requests for records and Movants will lose the benefit of the very privacy protections they seek to defend in this litigation.[4]

### 2. Movants' Protectable Interest Created by State Statute.

Movants' legal interest in the privacy of their prescription records is also protected by the Oregon statute creating the PDMP. Intervention Br. 11. The DEA makes no attempt to contest that this law creates a significant protectable interest.

Oregon Revised Statutes § 431.966(2)(a)(C) provides that the PDMP may disclose information in response to a request by law enforcement only "[p]ursuant to a valid court order based on probable cause." Section 431.966(6) provides that any person injured by a violation of § 431.966(2)(a)(C) "may bring a civil action against the authority, person or entity [responsible for the violation] and may recover damages in the amount of $1,000 or actual damages, whichever is greater," provided that the party responsible for the violation acted with gross negligence, recklessness, or intent. Section 431.966 was enacted specifically to protect persons,

_____

[4] As the Ninth Circuit has explained,

> [a] liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts. By allowing parties with a *practical* interest in the outcome of a particular case to intervene, we often prevent or simplify future litigation involving related issues; at the same time, we allow an additional interested party to express its views before the court.

*Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1496 n.8 (9th Cir. 1995) (quoting *Greene v. United States*, 996 F.2d 973, 980 (9th Cir. 1993) (Reinhardt, J., dissenting)).

like Movants, who have prescription records in the PDMP. As the "intended beneficiaries" of the statute's protections, Movants have a significant protectable interest in the privacy of their prescription records justifying intervention. *California ex rel. Lockyer*, 450 F.3d at 441; *see also Cal. Dump Truck Owners Ass'n*, 275 F.R.D. at 306–07 ("[The proposed intervenor] is not obligated to identify a 'specific legal or equitable interest.' It is enough that the [intervenor's] members benefit from the challenged legislation . . . .").

The interest created by the PDMP statute also has a sufficient relationship to the claims at issue in this case. That this case does not involve the civil damages provision of the statute is immaterial. Indeed, a statute can create significant protectable interests even if it "does not give the proposed intervenors any enforceable rights, nor . . . seek to protect any of their existing legal rights." *California ex rel. Lockyer*, 450 F.3d at 441. The Ninth Circuit's "intervention caselaw has not turned on such technical distinctions. Rather, [it] ha[s] taken the view that a party has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation." *Id.* Here, this litigation (as it exists between the current parties) will determine whether the warrant requirement imposed by § 431.966(2)(a)(C) is preempted by federal law. The answer to that question could eliminate the protections of § 431.966(2)(a)(C) for Movants and permit the DEA and other federal law enforcement agencies to obtain Movants' and others' confidential prescription records from the PDMP without a warrant. This is a "practical impairment of interests" and demonstrates a close relationship between Movants' asserted interest and the claims at issue before the Court.

**B. The Disposition Of This Lawsuit Without Movants' Participation Will Impair Movants' Ability To Protect Their Interests.**

Movants explain in their opening brief why disposition of this lawsuit would be likely to adversely affect their interests. Intervenors' Br. 12–13. The DEA's only basis for contesting this claim is its assertion that Movants "may" have the right to challenge the Oregon statute authorizing the PDMP's collection of prescription information in state court. Resp. Br. 11. The DEA completely misconstrues Movants' interests and claims. Movants do not challenge the constitutionality of the State of Oregon's collection of information about prescriptions for schedule II–IV drugs for public health purposes, nor do they assert a right-to-informational-privacy claim. Movants' claim is that the federal Drug Enforcement Administration is violating their rights under the Fourth Amendment by requesting and obtaining prescription records from the PDMP using administrative subpoenas, and that the federal subpoena statute upon which the DEA relies, 21 U.S.C. § 876, is unconstitutional under the Fourth Amendment as applied to confidential prescription records held by the PDMP. It is simply irrelevant that Movants might be able to bring an entirely separate claim against a different party in another forum, and the DEA cites no law in support of its contention. Because Movants' ability to protect the interests they actually assert may be impaired by the outcome of this litigation, Intervenors' Br. 12–13, intervention is appropriate.

**C. The Existing Parties Will Not Adequately Represent Movants' Interests In This Litigation.**

The DEA's assertion that the existing parties will adequately represent Movants' interests is likewise predicated on a misunderstanding of Movants' claims. The DEA states that Movants' reasons for intervening "are based on their privacy interests, an issue not relevant to this case." Resp. Br. 11–12. The DEA is presumably again making reference to an informational privacy

12 – REPLY MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE

claim not raised by Movants. The privacy claim that Movants *do* assert—that they have a reasonable expectation of privacy in their prescription records protected by the Fourth Amendment's warrant requirement—is clearly relevant to this case, as explained above and in Intervenors' opening brief. *Supra* part I.A.1; Intervention Br. 9–12. Moreover, the fact that Oregon is focused on the related preemption issue, not on the Fourth Amendment claim raised by Movants, *strengthens* Movants' intervention claim. The factors for evaluating whether Movants' interest will be adequately represented by the existing parties include whether a present party "will undoubtedly make all the intervenor's arguments" and whether the present plaintiff is "willing to make such arguments." *Sw. Ctr. For Biological Diversity*, 268 F.3d at 822. That Movants' interest is distinct from Oregon's, has not been raised by Oregon, and likely will not be raised by Oregon weighs heavily in favor of intervention.

Accepting the DEA's argument would mean that no party could seek to intervene to raise a claim not already before the court. The Ninth Circuit has squarely rejected that argument:

> The government argues that in determining the adequacy of [plaintiff's] representation of the applicants' interests, we should consider only the issues which the [plaintiff] raises in its complaint. It says in effect that we should ignore the additional issues which the applicants wish to raise to protect the applicants' own interests. That argument stands the relevant provisions of Rule 24 on its head by defining adequacy in terms of what existing parties are going to argue rather than in terms of the interests of the applicants in the subject matter of the litigation. This view is directly contrary to our law . . . .

*United States v. Oregon*, 839 F.2d 635, 638 (9th Cir. 1988) (citation omitted). If it "was clear that the existing parties were making all the arguments that applicants for intervention sought to make," intervention would not be justified. *Id.* As the DEA's response highlights, however, the opposite is true here. Movants must therefore be granted leave to intervene as of right.

13 – REPLY MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE

## II.    MOVANTS ARE ENTITLED TO PERMISSIVE INTERVENTION.

In the alternative, Movants seek to intervene permissively pursuant to Federal Rule of Civil Procedure 24(b). Intervention Br. 16–18. The DEA asserts, without elaboration, that permissive intervention is not justified because Movants' claim shares no common question of law or fact with the main action. Resp. Br. 12. To the contrary, Movants' Fourth Amendment claim is manifestly predicated on the identical operative facts.

"'The determination of whether a "common question" exists is liberally construed.'" *Andrews v. Triple R. Distrib., LLC*, No. CV 12-346-TUC-HCE, 2012 WL 3779932, at *2 (D. Ariz. Aug. 31, 2012) (quoting *Silver v. Babbit,* 166 F.R.D. 418, 433 (D. Ariz. 1994)); *accord Bureerong v. Uvawas*, 167 F.R.D. 83, 85–86 (C.D. Cal. 1996) (citing *Stallworth v. Monsanto Co.*, 558 F.2d 257, 265 (5th Cir. 1977)). Here, Movants' Complaint in Intervention and the State of Oregon's Complaint rely on the same core set of underlying facts: that the DEA has been (and intends to continue) requesting confidential prescription records from the PDMP using administrative subpoenas. The challenged conduct of the DEA is the same in both claims, constituting a question of fact in common. This is plainly sufficient to meet the Rule 24(b) requirement. *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1111 (9th Cir. 2002) ("[I]f there is a common question of law or fact, the requirement of [Rule 24(b)] has been satisfied and it is then discretionary with the court whether to allow intervention.").

Moreover, "[i]n determining whether common questions of law or fact exist, a court will look to whether the intervenor would contribute to a full development of the underlying issues in the suit." *Or. Envtl. Council v. Or. Dep't of Envtl. Quality*, 775 F. Supp. 353, 359-60 (D. Or. 1991). As explained in Movants' opening brief, Movants will provide information, experience,

and factual development that will contribute to full development of the issues before the Court.
Intervention Br. 15–16.

The DEA further asserts that Movants' privacy rights are not properly before the Court
because "there are no specific subpoenas at issue in this case." Resp. Br. 12. But even if it were
true that Movants' personal privacy rights were not implicated—and, as the Complaint in
Intervention demonstrates, it is not—it would not constitute a bar to permissive intervention:

> permissive intervention under rule 24(b) requires only that the proposed
> intervener "have a question of law or fact in common" with the underlying action,
> that the request be timely made, and that the court have an independent basis for
> jurisdiction over the proposed intervener's claims. Fed. R. Civ. P. 24(b). No
> showing of direct personal interest is required.

*Cal. Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc.*, No. C 07-3747 PJH, 2008 WL 283798,
at *1 (N.D. Cal. Feb. 1, 2008) (citing *Kootenai Tribe of Idaho*, 313 F.3d at 1109), *aff'd* 642 F.3d
728 (9th Cir. 2011).

Finally, the DEA again asserts that intervention should be denied because the Supreme
Court in *Whalen* "decided that there is no constitutionally protected right of privacy to
information related to prescriptions." Resp. Br. 13. The Court did not so hold, but rather
determined that on the facts before it, no violation of the right to informational privacy had
occurred. *Whalen*, 429 U.S. at 605–06. In any event, whether there is a Fifth or Fourteenth
Amendment right to informational privacy in prescription records is beside the point, as Movants
are raising a Fourth Amendment claim. *See supra* part I.A.1.

<u>CONCLUSION</u>

For the reasons explained in Movants' opening brief and above, Movants respectfully
request that the Court grant their motion for intervention as of right pursuant to Federal Rule of

15 – REPLY MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE

Civil Procedure 24(a), or, in the alternative, their motion for permissive intervention pursuant to

Rule 24(b).

Dated: March 1, 2013                          Respectfully submitted,

/s/ Nathan Freed Wessler
_____
Nathan F. Wessler (*pro hac vice*)
Ben Wizner (*pro hac vice*)
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel.: (212) 549-2500
Fax: (212) 549-2654

/s/ Kevin Díaz
_____
Kevin Díaz (OSB No. 970480)
ACLU Foundation of Oregon
PO Box 40585
Portland, OR 97240
Tel.: (503) 227-6928
Fax: (503) 227-227-6948

*Counsel for Plaintiffs-Intervenors*

### CERTIFICATE OF COMPLIANCE

This brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b),

54-1(c), or 54-3(e) because it contains 4689 words, including headings, footnotes, and

quotations, but excluding the caption, table of contents, table of authorities, signature block, and

any certificates of counsel.

Dated: March 1, 2013

/s/ Nathan Freed Wessler
Nathan Freed Wessler