ELLEN F. ROSENBLUM
Attorney General
SHEILA H. POTTER #993485
Deputy Chief Trial Counsel
NINA R. ENGLANDER #106119
Assistant Attorney General
Department of Justice
1515 SW Fifth Ave, Suite 410
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email:  Sheila.Potter@doj.state.or.us
        Nina.Englander@doj.state.or.us

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| OREGON PRESCRIPTION DRUG MONITORING PROGRAM, an agency of the STATE OF OREGON,<br><br>        Plaintiff,<br><br>  v.<br><br>UNITED STATES DRUG ENFORCEMENT ADMINISTRATION, an agency of the UNITED STATES DEPARTMENT OF JUSTICE,<br><br>        Defendant. | Case No. 3:12-cv-02023-HA<br><br>MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

## I.        INTRODUCTION

This case arises out of a series of administrative subpoenas from the U.S. Drug

Enforcement Administration to the Oregon Prescription Drug Monitoring Program, seeking the

production of protected health information. Oregon law requires the PDMP to protect the

subpoenaed records unless it is ordered by a court to disclose them. This case presents two

Page 1 -    MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
        SP3/cjw/4339567-v1

Department of Justice
1515 SW Fifth Ave, Suite 410
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

questions for this Court: (1) whether PDMP lawfully must refuse to produce the desired records in the absence of a court order enforcing the subpoena; and (2) whether PDMP lawfully may decline to produce the records in the absence of a court order enforcing the administrative subpoena. These questions are related but separate, and PDMP asks the Court to answer both questions affirmatively.

With respect to the first question, Oregon law prohibits PDMP from disclosing protected health information to anyone without a court order based on probable cause. The federal Controlled Substances Act (CSA) gives the DEA authority to issue administrative subpoenas to PDMP; the CSA does not require a showing of probable cause, but administrative subpoenas are not enforceable except through a court order. As a result, the requirement of a court order is consistent between federal and state law, and PDMP must maintain the confidentiality of individuals' protected health information unless a court compels the production of that information. PDMP will comply with any court order enforcing such a subpoena—with or without probable cause—but does not believe that it may produce the protected records without such an order.

As to the second question, the United States has taken the position that PDMP must produce protected health records and may not choose to wait for a court review and order compelling that production. But PDMP, like the subject of any administrative subpoena, is entitled to a judicial determination that an administrative subpoena meets federal requirements before it can be forced to comply with the subpoena. The DEA's position is flatly contradicted by federal law.

PDMP brought this declaratory judgment action pursuant to 28 U.S.C. § 2201 and moves for summary judgment pursuant to Fed. R. Civ. P. 56. There are no material facts in dispute, and the parties agree that their dispute can be resolved as a matter of law.

Department of Justice
1515 SW Fifth Ave, Suite 410
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

## II.      BACKGROUND

### A.      Relevant Statutes.

The state and federal statutes at issue in this case—ORS 431.966 and the CSA—both provide for judicial enforcement of an administrative subpoena through a court order.

### 1.      ORS 431.966.

Chapter 431 of the Oregon Revised Statutes governs state and local administration and enforcement of health laws. PDMP was established for the Oregon Health Authority to "maintain a prescription monitoring program for monitoring and reporting information about prescription drugs dispensed by pharmacies in Oregon that are classified in schedules II through IV under the federal Controlled Substances Act." ORS 431.962(1)(a). The information is protected health information, under that law:

> Prescription monitoring information submitted to PDMP constitutes protected health information:
>
> (1)(a) Except as provided under subsection (2) of this section, prescription monitoring information submitted under ORS 431.964 to the prescription monitoring program established in ORS 431.962:
>
> (A) Is protected health information under ORS 192.553 to 192.581.
>
> (B) Is not subject to disclosure pursuant to ORS 192.410

ORS 431.966(1). Oregon law prohibits the disclosure of protected health information collected by PDMP except in limited circumstances. Under the provision relevant here, PDMP may disclose such information only "[p]ursuant to a valid court order based on probable cause and issued at the request of a federal, state or local law enforcement agency engaged in an authorized drug-related investigation involving a person to whom the requested information pertains." ORS 431.966(2)(a)(C).

### 2.      The Controlled Substances Act.

The Controlled Substances Act gives the Attorney General broad authority to issue administrative subpoenas to investigate drug crimes. "In any investigation relating to his

Department of Justice
1515 SW Fifth Ave, Suite 410
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

functions … with respect to controlled substances…the Attorney General may subpena [sic] witnesses, compel the attendance and testimony of witnesses, and require the production of any records … which the Attorney General finds relevant or material to the investigation." 21 U.S.C. § 876(a). The authority to issue administrative subpoenas was delegated to the DEA. *See* 28 C.F.R. § 0.100.

The CSA does not give the Attorney General authority to enforce his own administrative subpoenas. Instead, when a respondent refuses to comply with an administrative subpoena issued by the DEA under § 876(a), the CSA expressly directs the DEA to seek a court order to compel compliance:

> In the case of contumacy by or refusal to obey a subpena [sic] issued to any person, the Attorney General [via the DEA] may invoke the aid of any court of the United States …. to compel compliance with the subpoena [sic]…. Any failure to obey *the order of the court* may be punished by the court as a contempt thereof.

21 U.S.C. § 876(c) (emphasis added).

## B.    Factual Background

There are two subpoenas that are the basis for the dispute in this case, which were served on PDMP in September 2012. The DEA previously served a subpoena on PDMP in January 2012, and it has advised that it intends to serve similar subpoenas regularly. The January 2012 subpoena was enforced by an order from this Court, without PDMP having had an opportunity to brief the issues for the Court, and PDMP produced responsive records in compliance with the order. That previous subpoena provides useful context for this case, and PDMP therefore briefly outlines it below.

### 1.    January 5, 2012, Subpoena Enforced by Judge Papak

The issue in this case first arose in January 2012, when the DEA issued an administrative subpoena to PDMP to produce a summary of all prescription drugs prescribed by a specified physician. (*See* Dec. of Lori A. Cassity in Supp. of Pet. to Enforce DEA Admin. Subpoena, Ex.

Department of Justice
1515 SW Fifth Ave, Suite 410
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

A, *United States v. Or. Prescription Drug Monitoring Program*, No. 12-MC-298 (D. Or.

Aug. 24, 2012), ECF No. 4). (A copy of the court file from that case is attached for the Court's

convenience.) On January 18, 2012, PDMP objected to the subpoena on the grounds that Oregon

law prohibited disclosure of the information except under a court order. (*See id.* at Ex. B).

Seven months later, on August 24, 2012, the DEA filed a petition to enforce the January

subpoena. (*See* Pet. to Enforce DEA Admin. Subpoena, *supra* at ECF No. 1). The Memorandum

in Support of the Petition laid out the legal basis for that one subpoena and argued that the

specific subpoena in question met the federal requirements for an administrative subpoena. (*See*

*id.* at ECF No. 2.) It also argued that PDMP should have to comply promptly with all future

administrative subpoenas from any federal agency.

The DEA mailed the petition and pleadings to the Oregon Department of Justice in

Salem; the Oregon DOJ received the pleadings on Monday, August 27. (*See* Declaration of Nina

Englander, ¶ 2). That same day—August 27, 2012—The Hon. Paul Papak signed the Form of

Order submitted by the DEA, enforcing the subpoena. The order submitted by the DEA to the

Court reads, in part:

> That Oregon Revised Statute, Section 431.966(2)( a)(C) is
> preempted by Title 21 United States Code, Section 876, to the
> extent that the state statute requires a court order or showing of
> probable cause before compliance with an administrative subpoena
> from a federal agency; and
>
> That the State of Oregon Prescription Drug Monitoring Program
> shall promptly comply with all federal administrative subpoenas
> henceforth.

(*See* Order to Enforce DEA Admin. Subpoena, *supra* at ECF No. 6). On September 6, 2012,

PDMP produced the records in compliance with the order. (*See* Englander Decl., ¶ 3).

### 2.    September 2012 Subpoenas at Issue in this Case

On September 11, 2012, the DEA issued a new administrative subpoena to PDMP,

demanding records containing protected health information of an individual. (*See id.* ¶ 4). The

subpoena requested compliance by September 22, 2012. (*See id.* at Ex. C). On September 17,

SP3/cjw/4339567-v1

Department of Justice
1515 SW Fifth Ave, Suite 410
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

2012, the DEA issued a second administrative subpoena to PDMP, demanding a summary of all prescription drugs prescribed by two physicians. (*Id.* ¶ 5). The subpoena requested compliance by September 28, 2012. (*Id.* at Ex. D). On September 21, 2012, PDMP, through its counsel, objected by separate letter to each subpoena. (*Id.* ¶¶ 6, 7). PDMP objected on the basis that Oregon law prohibits disclosure of the requested information except pursuant to valid court order, and pointed out that the administrative subpoenas do not constitute valid court orders. (*Id* at Exs. E and F.).

The Oregon and U.S. Departments of Justice were unable to reach agreement on whether the DEA can compel the production of these records without a court order. On November 9, 2012, accordingly, PDMP filed the instant action, seeking a declaration that it cannot be compelled to disclose an individual's protected health information to the DEA under an administrative subpoena unless so ordered by a federal court.

### III.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Here, the parties agree on all material facts. This dispute is a legal one.

### IV.    ARGUMENT

PDMP argues, first, that it must protect the records in question until the administrative subpoena is enforced through a court order, because federal law and state law are consistent in their requirement of a court order to compel the production of these protected records, and state law is therefore not preempted. In the alternative, even if the state law were preempted, PDMP could lawfully decline to produce records, consistent with the Oregon legislature's clear intent, until a court reviews the DEA's administrative subpoena and reaches a judicial determination that the subpoena in question is valid and complies with federal requirements.

Page 6 -    MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
SP3/cjw/4339567-v1

Department of Justice
1515 SW Fifth Ave, Suite 410
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

**A.      The Controlled Substances Act does not preempt Oregon law with respect to the protections afforded to private health information.**

The initial question in this case is whether the Controlled Substances Act completely preempts ORS 431.966(2)(a)(C) protecting against disclosure of personal health information. Preemption would be merited here only if there were a clear statement of Congressional intent—which there is not—or if there were a positive conflict between the federal and state laws—which, again, there is not. Federal and state law can be read entirely consistently to allow for the DEA to issue an administrative subpoena under the CSA, *and* to allow for PDMP to request judicial review of that subpoena and to wait for a court order before producing those records that are protected under Oregon law.

**1.      Federal law calls for courts to harmonize state and federal law where possible, especially where there is no clear Congressional intent to preempt state law.**

In all preemption cases, the court "start[s] with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (citation and internal quotation marks omitted). The CSA contains no sign of any such clear and manifest intent to preempt Oregon law. Rather, the contrary is true: "[t]he CSA explicitly contemplates a role for the States in regulating controlled substances, as evidenced by its pre-emption provision." *Gonzalez v. Oregon*, 546 U.S. 243, 251 (2006). It provides:

> No provision of [the CSA] shall be construed as indicating an intent on the part of the Congress to occupy the field in which that provision operates, including criminal penalties, to the exclusion of any State law on the same subject matter which would otherwise be within the authority of the State, *unless there is a positive conflict between that provision of [the CSA] and that State law so that the two cannot consistently stand together.*

21 U.S.C. § 903 (emphasis added). The Ninth Circuit has expressly recognized that this "non-preemption clause provides that the CSA shall … not be construed to preempt state law unless there is a 'positive conflict' between the text of the statute and state law." *Oregon v. Ashcroft*, 368 F.3d 1118, 1126 (9th Cir. 2004).

Page 7 -   MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Department of Justice
1515 SW Fifth Ave, Suite 410
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

"[T]he purpose of Congress is the ultimate touchstone in every pre-emption case." *Wyeth*,
555 U.S. at 565. Courts will not infer Congressional intent to displace the state's historical police
power from Congressional silence or ambiguity. *See, e.g., Solid Waste Agency of N. Cook Cty. v.
Army Corps of Eng'rs*, 531 U.S. 159, 172-74 (2001) (requiring a clear indication of
congressional intent to encroach on traditional state powers). Rather, where historic state powers
like the power to regulate and protect health information are implicated, only a clear statement of
congressional intent to displace those historic powers is sufficient. *Id*. If the Court has "any
doubt about congressional intent, [it is] to err on the side of caution, finding no preemption."
*Malabed v. N. Slope Borough*, 335 F.3d 864, 869 (9th Cir. 2003). Further, in determining the
construction of the federal and state statutes at issue, the court should "harmoniz[e] state and
federal statutes where possible so as to avoid finding preemption." *Unocal Corp. v. Kaabipour*,
177 F.3d 755, 769 (9th Cir. 1999).

Here, the Oregon law at issue—ORS 431.966—concerns state and local administration
and enforcement of health laws and the state's protection of privacy interests of its citizens. As
the Supreme Court has stated, "the regulation of health and safety matters is primarily, and
historically, a matter of local concern." *Hillsborough Cnty., Fla. v. Automated Med. Labs., Inc*.,
471 U.S. 707, 719 (1985). ORS 431.966 falls squarely within this realm, and it can and should be
harmonized with the CSA to accomplish Congress's intent and the state's interest in protecting
its citizens' privacy interests.

There is one limited conflict—ORS 431.966(2)(a)(C) requires a showing of probable
cause, and the CSA does not—and PDMP agrees that the probable-cause requirement is
preempted. But the remainder of the Oregon statute is entirely consistent with the DEA's
administrative subpoena powers and can easily be harmonized with it. As the next two sections
discuss, there is no conflict between the plain language of the laws as to the court order—and
Oregon law poses no obstacle to the DEA's ability to carry out the objectives of the CSA. In fact,

Page 8 -    MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
SP3/cjw/4339567-v1

the CSA and Oregon law very neatly mesh, in that they both require a court order before an agency may be legally compelled to produce protected health information.

>**2.    There is no conflict between the court order requirements in the text of the Oregon law and the text of the CSA.**

The issue in this case is not whether PDMP may withhold the records altogether, as some other states have tried to do. Rather, it is whether PDMP must refrain from producing the records *until the DEA obtains a court order* enforcing its administrative subpoena. And there is no conflict on that point between the two laws. ORS 431.966(2)(a)(C) allows PDMP to produce protected records to the DEA only in response to a court order—and federal law likewise provides that the DEA must obtain a court order before it can enforce its administrative subpoenas.

Administrative subpoenas issued by the DEA pursuant to § 876(a) are not "self-enforcing." *United States v. Golden Valley Elec. Ass'n*, 689 F.3d 1108, 1116 (9th Cir. 2012). Rather, the CSA specifies that DEA must "invoke the aid of any court of the United States …. to compel compliance with the [administrative] subpoena." 21 U.S.C. § 876(c). When the subject of the subpoena fails to comply, the Ninth Circuit has recognized that the federal issuing agency "must seek a court order compelling compliance. The court will review … administrative subpoenas for compliance with the appropriate standard before issuing an enforcement order." *Golden Valley Elec.*, 689 F.3d at 1116. Failure to obey the court order enforcing the administrative subpoena "may be punished by the court as a contempt thereof." 21 U.S.C. § 876(c). There is, of course, no penalty for failing to immediately comply with an administrative subpoena.

Similarly, ORS 431.966 requires a "valid court order" before PDMP is permitted to comply with law enforcement's demands for the information:

>the Oregon Health Authority shall disclose the information:

>…

Page 9 -    MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
SP3/cjw/4339567-v1

> (C) Pursuant to a valid court order based on probable cause and
> issued at the request of a federal, state or local law enforcement
> agency engaged in an authorized drug-related investigation
> involving a person to whom the requested information pertains.

ORS 431.966(2)(a). Therefore, with the exception of the probable-cause requirement (which

PDMP agrees is preempted), the plain language of the CSA and ORS 431.966(2)(a)(C)

contemplate precisely the same enforcement mechanism—a court order compelling

compliance—and are therefore entirely consistent.

Even the details of the judicial review contemplated by the CSA are consistent with ORS

431.966(2)(a)(C). In determining whether to issue a court order, a federal court may not simply

rubber-stamp administrative subpoenas. Instead, the court must engage in a fact-specific analysis

to determine whether the subpoena complies with federal law:

> An administrative subpoena may not be too indefinite or broad.
> The critical questions are: (1) whether Congress has granted the
> authority to investigate; (2) whether procedural requirements have
> been followed; and (3) whether the evidence is relevant and
> material to the investigation. Even if other criteria are satisfied, a
> Fourth Amendment reasonableness inquiry must also be satisfied.

*Golden Valley Elec.*, 689 F.3d at 1113 (citations and internal quotation marks omitted). This is,

in essence, precisely what the Oregon statute calls for, in its requirement of a court order issued

at the request of a law enforcement agency "engaged in an authorized drug-related investigation

involving a person to whom the requested information pertains." The federal-court review of an

administrative subpoena would exactly satisfy ORS 431.966(2)(a)(C)

The court order requirements under Oregon and federal law are consistent. The CSA does

not preempt this Oregon law.

**3.    The court order requirement is not an obstacle to enforcement of the CSA.**

Just as there is no conflict between the plain language of the two laws, there is also no

conflict between the Oregon law and the *purpose* of the federal law. A state law can also be

preempted on the basis that it "stands as an obstacle to the accomplishment and execution of the

full purposes and objectives of Congress." *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458

Page 10 -   MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Department of Justice
1515 SW Fifth Ave, Suite 410
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

U.S. 141, 153 (1982). But ORS 431.966(2)(a)(C) is not an obstacle to the accomplishment and execution of the CSA (again, when the probable-cause requirement is read out of it, as PDMP agrees it must be).

Congress conferred upon the DEA the authority to issue administrative subpoenas that are not self-executing and that therefore require court enforcement. *See* 21 U.S.C. § 876(a), (c); *United States v. Golden Valley Elec. Ass'n*, 689 F.3d at 1116. In so doing, Congress provided protections against oppressive or otherwise abusive use of the DEA's subpoena authority. Oregon law cannot be an obstacle to Congress's objectives when it simply results in the DEA following its own congressionally mandated enforcement mechanisms. Court enforcement of an administrative subpoena does not impose an additional burden on the DEA above and beyond what is required by federal law. Instead, requiring court enforcement of an administrative subpoena is consistent with the objectives of Congress in enacting the CSA and with the plain language of the CSA.

And the Supreme Court has characterized judicial review of administrative subpoenas as "rather minimal limitations on administrative action which we think are constitutionally required." *See v. City of Seattle*, 387 U.S. 541, 544 (1967); *see also United States v. Sturm, Ruger & Co.*, 84 F.3d 1, 3-4 (1st Cir. 1996) ("The requirements for enforcement of an administrative subpoena are not onerous.")

As a result, state law is not an obstacle to the accomplishment of the CSA's purposes, and ORS 431.966(2)(a)(C) is not preempted on this basis either.

In short, there is no Congressional intent to preempt Oregon's regulation of its pharmaceutical information, no positive conflict between Oregon law and the CSA as to the court order that PDMP has asked for, and no obstacle to the execution of Congress's intent. The CSA does not preempt Oregon's statutory mandate that PDMP protect its health records except in response to a court order. Only the probable-cause provision is preempted by federal law. PDMP may not, as a result, turn over the records that the DEA is seeking unless the DEA shows

SP3/cjw/4339567-v1

Department of Justice
1515 SW Fifth Ave, Suite 410
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

a court that its subpoena complies with federal law and thereby obtains a court order enforcing the subpoena.

**B.    Alternatively, PDMP may decline to produce protected health records to the DEA until the DEA obtains a court order enforcing its administrative subpoena.**

Even if the Oregon were preempted, as the DEA contends, PDMP still has the legal right to decline to produce its protected records in the absence of a court order enforcing an administrative subpoena. Any subject of an administrative subpoena may seek a judicial determination that the subpoena is reasonable:

> [A]lthough our cases make it clear that [a federal agency] may issue an administrative subpoena without a warrant, they nonetheless provide protection for a subpoenaed [person] by allowing him to question the reasonableness of the subpoena, before suffering any penalties for refusing to comply with it, by raising objections in an action in district court.

*Donovan v. Lone Steer, Inc*., 464 U.S. 408, 414 (1984) (citations and internal quotation marks omitted) (discussing the Secretary of Labor's authority to issue administrative subpoenas under the Fair Labor Standards Act), *cited in Sturm, Ruger & Co.*, 84 F.3d at 3-4 ("unlike the subject of an actual search, the subject of an administrative subpoena has an opportunity to challenge the subpoena before yielding the information"); *see also See v. City of Seattle*, 387 U.S. at 544 (while an agency may issue demands in the form of administrative subpoenas, the demand "may not be made and enforced by the inspector in the field, and the subpoenaed party may obtain judicial review of the reasonableness of the demand prior to suffering penalties for refusing to comply").

The text of the CSA is entirely consistent with the principle that the recipient of an administrative subpoena always has the right to challenge the administrative subpoena in federal court before suffering any penalties for refusing to comply. The CSA directs the DEA to "invoke the aid of any court of the United States …. to compel compliance with the [administrative] subpoena" and provides that failure to obey the court order enforcing the administrative

Department of Justice
1515 SW Fifth Ave, Suite 410
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

subpoena—not failure to obey the administrative subpoena itself—"may be punished by the court as a contempt thereof." 21 U.S.C. § 876(c).

In determining whether to enforce an administrative subpoena under the CSA, the court considers, among other things, "whether procedural requirements have been followed" and "whether the evidence is relevant and material to the investigation." *United States v. Golden Valley Elec. Ass'n*, 689 F.3d at 1113. PDMP may not flatly refuse to provide the information at all—but it can wait until a court has reviewed the subpoena and determined whether enforcement is warranted. Waiting for an order is consistent with PDMP's clear direction from the Oregon legislature and consistent with federal law.

And because Oregon law has given PDMP the authority and a clear directive to protect the private and confidential health information that it collects, it is not only lawful but reasonable for PDMP to ask for judicial review of the administrative subpoenas that it receives.

**C.    This Court is not bound, and should not be persuaded, by a decision in another action in which PDMP never had the opportunity to appear.**

As detailed in the Factual Background at the start, the DEA filed a petition in August 2012 to enforce an administrative subpoena that it had issued seven months before. Its counsel served the Oregon Department of Justice in Salem by mail, on August 23; it was received the next Monday, the same day that the Court signed a form of order prepared by the DEA, without the benefit of PDMP's response. That case should not direct the outcome here, for three reasons. First, the DEA's argument on preemption is wrong, for the reasons outlined above. Second, the DEA had suggested that the Court should follow the lead of two other U.S. District Court decisions from other states, which were founded on arguments and facts that are not present here. And third, the DEA's form of order was so broad as to misstate federal law on the enforceability of administrative subpoenas, and should not be a guide in this case.

The first point has been discussed above and will not be re-argued here. As to the second point, the DEA's August 2012 petition pointed the Court to two decisions—one in Michigan and

Page 13 -   MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Department of Justice
1515 SW Fifth Ave, Suite 410
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

one in Colorado—in which state agencies took the position that it was flatly illegal for them to produce their protected records to the DEA *at all*. Although the DEA's August 2012 memorandum characterized those states' arguments as "similar state restrictions" (*see* Mem. in Supp. of Pet. at 12, *U.S. v. Oregon PDMP, supra* at ECF No. 2), in fact the restrictions were quite different and so the cases are not on point.

Michigan law precluded the disclosure of confidential information to anyone, which is clearly in conflict with the plain language and the intent of the CSA. *See United States v. Michigan Dep't of Comty. Health*, No. 1:10-mc-109, 2011 WL 2412602, at *13 (W.D. Mich. June 9, 2011) (Michigan's confidentiality statute nullified to the extent that it prevented the DEA "from using a proper federal subpoena to obtain records which involve a controlled substance"). And Colorado took the position that it would only give the DEA information "specific to a *patient*," due to the requirements of Colorado law—and the court there found that the "overly burdensome and time-consuming means (*i.e.*, the DEA would be required to contact and search the records of more than 800 pharmacies located in Colorado for information on the three registrants)" interfered with the intent and purpose of the CSA. *See United States Dep't of Justice v. Colorado Bd. of Pharm.*, No. 1-cv-1116, 2010 WL 3547898, at *4 (D. Colo. Aug. 13, 2010). In both of those cases, state law flatly forbade the production of records, and the state agencies argued that they were bound by state law.

In contrast, Oregon has never taken the position that the DEA may not have the records, or that PDMP must protect the records against any incursions, or that it had an obligation to comply with state law that was inconsistent with the CSA. Rather, PDMP analyzed the intersection of state and federal law and has determined that the requirement of a court order was not preempted. And it concluded, as a result, that it was required to wait for judicial review and a court order before it could turn over the records—which is precisely the enforcement mechanism contemplated for any administrative subpoena. This is an entirely different analysis from

Page 14 -  MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
SP3/cjw/4339567-v1

Department of Justice
1515 SW Fifth Ave, Suite 410
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Colorado's or Michigan's. PDMP never had an opportunity in the August 2012 case to make that argument.

And, third, the form of order prepared by the DEA was not supported by its brief or by the law. The DEA's petition had asked the Court to rule—on the basis of having justified the single subpoena at issue, under the four *Golden Valley* factors—that PDMP therefore must always "comply with *all* federal administrative subpoenas *in their entirety.*" (*See* Mem. in Supp. of Pet. at 12, *supra* at ECF No. 2) (emphasis added). That conclusion—which was mirrored in the form of order that the DEA supplied to the Court—was clearly far too broad. The fact of one administrative subpoena having been valid for one demand cannot be the basis for preventing PDMP from *ever again* contesting *any* part of *any* other subpoena from *any* federal agency. And the DEA's order essentially declared administrative subpoenas to be self-enforcing, which they simply are not.

The form of order submitted by the DEA was signed without PDMP's having had the opportunity to present any response—and the language chosen by the DEA was unreasonably broad, not supported by the memorandum submitted in support of it, and in conflict with clear federal law allowing the subjects of administrative subpoenas to ask for judicial review. And, of course, the unpublished order is not precedent. *See* Fed. R. App. P. 36-3(a) ("Unpublished dispositions and orders of this Court are not precedent…."). That order, as a result, should not guide this Court's decision.

## V.    CONCLUSION

Because the Controlled Substances Act and the Oregon privacy law governing PDMP records can be readily harmonized, PDMP asks this Court to find that the Controlled Substances Act does *not* preempt ORS 431.966(2)(a)(C), except as to probable cause. Accordingly, PDMP asks the Court to find that PDMP may not produce its protected records in response to a DEA administrative subpoena until the subpoena has been enforced by a court order finding that the subpoena meets all relevant federal requirements.

Page 15 -  MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Department of Justice
1515 SW Fifth Ave, Suite 410
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

In the alternative, PDMP asks the Court to rule that it *may* lawfully decline to produce protected records under ORS 431.966 in response to a DEA administrative subpoena until the subpoena has been enforced by a court order finding that it meets all relevant federal requirements.

DATED June 14, 2013.

Respectfully submitted,

ELLEN F. ROSENBLUM
Attorney General

/s/ Sheila H. Potter
SHEILA H. POTTER #993485
Deputy Chief Trial Counsel
NINA R. ENGLANDER #106119
Assistant Attorney General
Trial Attorneys
Phone: 971-673-1880
Fax: 971-673-5000
Sheila.Potter@doj.state.or.us
Nina.Englander@doj.state.or.us
Of Attorneys for Plaintiff

SP3/cjw/4339567-v1

Department of Justice
1515 SW Fifth Ave, Suite 410
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000