**S. AMANDA MARSHALL, OSB #95437**
United States Attorney
District of Oregon
**KEVIN DANIELSON, OSB #06586**
Assistant United States Attorney
kevin.c.danielson@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR  97204-2902
Telephone: (503) 727-1025
FAX: (503) 727-1117
      Attorneys for Defendant

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| OREGON PRESCRIPTION DRUG MONITORING PROGRAM, an agency of the STATE OF OREGON, <br><br>       Plaintiff, <br><br>       v. <br><br> UNITED STATES DRUG ENFORCEMENT ADMINISTRATION, an agency of the UNITED STATES DEPARTMENT OF JUSTICE, <br><br>       Defendant. | Case No. 3:12-cv-02023-HA <br><br> **DEFENDANT DEA'S COMBINED MEMORANDUM IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF AND RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

Page - 1    Defendant DEA'S Combined Memorandum and Response Brief
      *Oregon Prescription Drug Monitoring Program v. Drug Enforcement Admin.,*
      3:12-cv-02023-HA

JOHN DOE 1, JOHN DOE 2, JOHN
DOE 3, JOHN DOE 4, DR. JAMES
ROE, and the AMERICAN CIVIL
LIBERTIES UNION OF OREGON,
INC.,

                    **Plaintiffs-Intervenors,**

                    **v.**

UNITED STATES DRUG
ENFORCEMENT
ADMINISTRATION, an agency of the
UNITED STATES DEPARTMENT
OF JUSTICE,

                **Defendant in Intervention.**

Defendant United States Drug Enforcement Administration, by S. Amanda
Marshall, United States Attorney for the District of Oregon, through Assistant U.S.
Attorney Kevin Danielson, submits this combined memorandum in support of its cross-
motion for summary judgment against Plaintiff and in response to Plaintiff's motion for
summary judgment.  Dkt. 24.

## Introduction

The Oregon Prescription Drug Monitoring Program ("PDMP"), a state agency in
Oregon, brought this declaratory judgment action under 28 U.S.C. § 2201 to determine its
rights and obligations in complying with administrative subpoenas issued by the U.S.
Drug Enforcement Administration ("DEA") under 21 U.S.C. § 876.  Under Oregon law,

PDMP maintains a program for monitoring and reporting prescription drugs dispensed by Oregon pharmacies that are classified in schedules II through IV under the federal Controlled Substances Act.  ORS § 431.966.  Oregon law prohibits the PDMP from disclosing protected health information that it collects to any local, state, or federal law enforcement agency without a court order based on probable cause.  ORS § 431.966(c).

The Controlled Substances Act ("CSA") authorizes the DEA to issue administrative subpoenas for witnesses and records that are relevant or material to an investigation of possible violations of the Act.  21 U.S.C. § 876(a).  The subpoena is valid when issued and compliance is required. If the party that is subpoenaed refuses to obey the subpoena, the Attorney General or his designee may file an action in federal district court to enforce the subpoena.  21 U.S.C. § 876(c).  The DEA is not required to obtain a court order based on probable cause to issue a subpoena or to have it enforced.

PDMP agrees that the probable cause requirement of ORS § 431.966(c) is preempted by the CSA but maintains that the federal and state statute are consistent in that both require a court order before a person can be compelled to produce protected health information.  Plaintiff's Brief, Dkt. 25, pp. 8-11.  But PDMP's preemption analysis is flawed.  The court order portion of ORS § 431.966(c) is invalid under the Supremacy Clause because it conflicts with the CSA, which allows the DEA to issue a subpoena without a court order and requires PDMP to comply with a subpoena without a court order unless PDMP has a good-faith basis to refuse to comply.  Alternatively, PDMP has not shown that the court order portion of ORS § 431.966(c) is severable from the probable cause requirement that PDMP agrees is preempted.

/ / / /

## Background

I.  **Federal law allows the DEA to issue administrative subpoenas for relevant or material records and witnesses when it is investigating possible violations of the CSA.**

Under the CSA, Congress authorized the Attorney General to issue administrative

subpoenas under the following circumstances.

> In any investigation relating to his functions under this subchapter with respect to controlled substances, listed chemicals, tableting machines, or encapsulating machines, the Attorney General may subpena [sic] witnesses, compel the attendance and testimony of witnesses, and require the production of any records (including books, papers, documents and other tangible things which constitute or contain evidence) which the Attorney General finds relevant or material to the investigation. . . .

21 U.S.C. § 876(a). The Attorney General has delegated this authority to the DEA

Administrator and supervisory personnel in the field.  28 C.F.R. Part 0, Subpart R, §

0.100; § 0.104, Appendix to Subpart R of Part 0 – Redelegation of Functions, § 4.  "In

the case of contumacy . . . or refusal to obey a subpena [sic]" issued by the DEA, "the

Attorney General may invoke the aid of any court of the United States . . . to compel

compliance with the subpoena [sic]."

21 U.S.C. § 876(c).  Failure to obey an order of the court may be punished by

contempt.  *Id.*

Information that the DEA obtains from an administrative subpoena can only be

released under limited circumstances and primarily to federal, state, and local officials

engaged in the prosecution of cases involving controlled substances before courts and

licensing boards.  28 C.F.R. Part 0, Subpart R, § 0.103.  In addition, information received

in response to a subpoena under 21 U.S.C. § 876(a) is "case sensitive and governed by

significant restrictions on the dissemination of information contained in received records, subjecting employees to discipline, termination, as well as civil and criminal penalties for improper disclosure." Dec. of Lori Cassity, Dkt. 29-1, p. 121 at ¶ 2.

Prescription information subpoenaed from the PDMP by the DEA is used to investigate possible violations of the CSA. Those possible violations are connected to prescriptions fraudulently obtained by a patient, prescriptions unlawfully issued by a physician, or prescriptions unlawfully filled by a pharmacy. Dec. of Cassity, Dkt. 29-1, p. 122 at ¶ 4. PDMP is the only resource in Oregon where this information is consolidated and is a crucial tool for DEA in its investigations. *Id.*, at pp. 122-23, ¶¶ 5.

## II.    Oregon law requires pharmacies to report information about certain prescriptions to PDMP.

The Oregon Health Authority was authorized to establish a "prescription monitoring program for monitoring and reporting prescription drugs dispensed by pharmacies in Oregon that are classified in schedules II and IV under the federal Controlled Substances Act." ORS § 431.962(1)(a). A pharmacy is required by law to report the following information to PDMP: (1) the name, address, and date of birth of the patient; (2) the identification of the pharmacy; (3) the identification of the practitioner who prescribed the drug; (4) the identification of the drug; (5) the date of the prescription: (6) the date the drug was dispensed; and (7) the quantity of the drug dispensed. ORS § 431.964(1)(a-g).

/ / / /

/ / / /

The Oregon Health Authority may only release the information under limited

circumstances.  As relevant here, information may be released:

> Pursuant to a valid court order based on probable cause and issued at the
> request of a federal, state, or local law enforcement agency engaged in an
> authorized drug-related investigation involving a person to whom the
> requested information pertains.

ORS § 431.966(2)(a)(C).

## DECLARATORY JUDGMENT AND SUMMARY JUDGMENT

Under the Declaratory Judgment Act, a party may file an action asking the Court

to determine the "rights and other legal relations of any interested party seeking such

declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201.  An

action for declaratory judgment is properly brought to determine whether state law is

preempted by federal law.  *Michigan Canners and Freezers Association. v. Agricultural*

*Marketing and Bargaining Board*, 467 U.S. 461, 463 (1984).

Fed. R. Civ. P. 57 states that the Rules of Civil Procedure govern the procedure for

obtaining a declaratory judgment under 28 U.S.C. § 2201.  Summary judgment is proper

when "there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a).  Plaintiff and DEA agree there is no

genuine dispute as to any material facts.

### The Supremacy Clause and preemption

Federalism is a central part of the Constitution and is based on the principle that

both the federal government and the state governments have elements of sovereign

immunity that the other is bound to respect.  *Arizona v. United States*, 132 S.Ct. 2492,

Defendant DEA'S Combined Memorandum and Response Brief
*Oregon Prescription Drug Monitoring Program v. Drug Enforcement Admin.*,
3:12-cv-02023-HA

2500 (2012).  The existence of two separate sovereigns results in the possibility that their laws can conflict or be at cross-purposes.  *Id*.  The Supremacy Clause of the Constitution states that federal law "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution of Laws of any State to the Contrary notwithstanding."  U.S. Const. art. VI, cl 2.  Under the Supremacy Clause, "Congress has the power to preempt state law."  *Arizona*, 132 S.Ct. at 2500.

Federal law preempts state law where "(1) Congress enacts a statute that explicitly pre-empts state law; (2) state law actually conflicts with federal law; or (3) federal law occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in that field."  *Chae v. SLM Corp*., 593 F.3d 936, 941 (9th Cir. 2010) (citations omitted).

In enacting the CSA, Congress did not explicitly preempt state law or preempt the field of controlled substances to the exclusion of state law.  *See* 21 U.S.C. § 903. Therefore, the issue before this Court is whether Oregon's PDMP statute conflicts with federal law on administrative warrants.

Conflict preemption occurs when compliance "with both federal and state regulations is a physical impossibility or where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Olympic Pipe Line Company v. City of Seattle*, 437 F.3d 872, 877 n.13 (9th Cir. 2006) (citations omitted).  When preemption applies, "state law is nullified to the extent that it

actually conflicts with federal law." *Hillsborough County, Florida v. Automated Medical Laboratories, Inc.*, 471 U.S. 707, 713 (1985).

### Administrative subpoenas

The subpoena power – "the authority to command persons to appear and testify or to produce documents or things-is a longstanding and necessary adjunct to the governmental power of investigation and inquisition," *In re Subpoena Duces Tecum*, 228 F.3d 341, 346 (4th Cir. 2000) (citing *United States v. Morton Salt Co.*, 338 U.S. 632, 642-43 (1950). All three branches of government have the power to issue subpoenas. *Id.* at 346-47.

Administrative subpoenas allow agencies in the executive branch to issue a compulsory request for documents or testimony without prior approval from a court. The Supreme Court has recognized that an agency's power to subpoena is based on the power to get information from those who are most interested in not providing it. *Morton Salt Co.*, 338 U.S. at 642. The government has a "power of inquisition," analogous to that of a grand jury, that does not depend on a case or controversy for power to obtain evidence. *Id.* at 642. An agency charged with seeing that the laws are enforced can investigate on mere suspicion that a law is being violated or to assure itself that the law is not being violated. *Id.*

If a party refuses to comply with an administrative subpoena, agencies can seek enforcement through a federal court. Judicial review of an administrative subpoena in any enforcement action is "quite narrow" provided that the subpoena is not too broad or

indefinite. *United States v. Golden Valley Electric Assoc.*, 689 F.3d 1108, 1113 (9th Cir.

2012). The only questions are: "(1) whether Congress has granted the authority to

investigate; (2) whether procedural requirements have been followed; . . .(3) whether the

evidence is relevant and material to the investigation[;]" and whether a Fourth

Amendment "reasonableness" inquiry is satisfied. *Id*.

Specifically, "[t]he Supreme Court has refused to require that an agency have

probable cause to justify the issuance of a subpoena." *Golden Valley Electric Assoc.*, 689

F.3d at 1115, citing *United States v. Powell*, 379 U.S. 48, 57 (1964); *Oklahoma Press

Pub. Co. v. Walling*, 327 U.S. 188, 215-16. Probable cause is not required for an

administrative subpoena because the object of many investigations is "to determine

whether probable cause exists to prosecute a violation." *In re Subpoena Duces Tecum*,

228 F.3d 341, 348 (4th Cir. 2000).

**Argument and authority**

**I.     The court order portion of ORS § 431.966(2)(a)(C) is preempted by federal
       law because it stands as an obstacle to the execution of the DEA's
       administrative subpoena power.**

Congress enacted the CSA to "strengthen law enforcement tools against the traffic

of illicit drugs." *Golden Valley Electric Assoc.,* 689 F.3d at 1113 (citing *Gonzales v.

Raich*, 545 U.S. 1, 10 (2005). Among other things, Congress explicitly authorized the

DEA to issue administrative subpoenas without first obtaining a court order to assist in

the investigation and enforcement of the nation's drug laws. 21 U.S.C. § 876(a). This is

nothing new; similar authorizations exist with respect to many executive agencies. *See,*

*e.g.*, 12 U.S.C. § 1818(n) (Federal Deposit Insurance Corp.); 15 U.S.C. § 49 (Federal

Trade Commission); 29 U.S.C. § 161 (National Labor Relations Board); 47 U.S.C. §

409(e)–(g) (Federal Communications Commission).  In describing the administrative

subpoena power conferred by Congress in the CSA and other statutes more than forty

years ago, the Supreme Court made clear that the power is not derived from, or

dependent on, any judicial function:

> Because judicial power is reluctant if not unable to summon evidence until it is
> shown to be relevant to issues in litigation, it does not follow that an
> administrative agency charged with seeing that the laws are enforced may not have
> and exercise powers of original inquiry.  It has a power of inquisition, if one
> chooses to call it that, which is not derived from the judicial function.

*Morton Salt*, 338 U.S. at 642-43.

ORS § 431.966(2)(a)(C) stands as an obstacle to the accomplishment and

execution of the full purposes and objectives of Congress in providing the DEA with the

power to issue administrative subpoenas.  The CSA permits DEA to issue a subpoena

based on the agency's determination that the information sought is "relevant or material

to [an] investigation."  21 U.S.C. § 876(a).  The Oregon law, in contrast, would require

the DEA to obtain a court order each time it wanted to act pursuant to an administrative

subpoena.  Courts, not the DEA, would become the subpoena authority, which is not

what Congress intended.  Indeed, had Congress intended to require court action before

the DEA could use the administrative subpoena power, it could have said so by

authorizing courts to issue subpoenas upon application by DEA representatives.  That is

not what Congress did in 21 U.S.C. § 876(a).  In short, forcing the DEA to go to court for

each administrative subpoena would present an obstacle to the execution of federal law because it would create an additional step not intended by Congress and would delay DEA's investigation of possible violations of the CSA.

The fact that the DEA "may invoke the *aid* of" a court to compel compliance with a subpoena when a person refuses to comply does not mean that a state law that requires a court order in all circumstances does not conflict with the federal scheme. Court action is not required for a DEA administrative subpoena to be valid. *United States v. Phibbs*, 999 F.2d 1053, 1077 (6th Cir. 1993) (When a subpoena is issued under 21 U.S.C. § 876(a), "the government does not have to secure a judicial warrant before service is effectuated."). Judicial intervention is merely a supplemental power to enforce the administrative subpoena where a person ignores the DEA's authority or questions the legitimacy of DEA's use of its administrative subpoena power. To conclude that a court order is always a prerequisite to the DEA administrative subpoena authority would presume that the DEA lacks authority to issue subpoena's based on a finding of relevance or materiality. The CSA does not permit such a presumption.

Other courts have determined that state law's like Oregon's are preempted by the CSA. In *United States v. Michigan Dep't of Community Health*, 2011 WL 2412602 (W.D. Mich. June 9, 2011), the United States sought to enforce a DEA subpoena issued under 21 U.S.C. § 876. A Michigan statute created a registry related to the issuance of identification cards for users of medical marijuana and the law explicitly provided that certain information in the registry was confidential. The DEA subpoenaed registration

cards which contained the name, address, and date of birth of the patient and care giver but the State agency refused to comply based on the confidentiality provision of state law. The court found that the confidentiality provision was preempted by federal law because the "Michigan legislature . . . cannot create a statutory obstacle to the federal government's enforcement of federal law regulating this controlled substance." *Id*. at *13. The court explained that the "confidentiality provision stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress, by preventing the federal government from using a proper federal subpoena to obtain records which involve a controlled substance, the use of which is prohibited by federal law." *Id*. (quotation omitted). The court ruled that the confidentiality provision "must be and is nullified to the extent it conflicts with the federal government's exercise of its subpoena power of [21 U.S.C. § 876]." *Id*. Similarly here, the court order provision of Oregon law stands as an obstacle to the DEA's subpoena power under § 876, which does not require a court order. *See U.S. Dep't of Justice v. Colorado Board of Pharmacy*, 2010 WL 3547898 at *1 (D. Colo. Aug. 13, 2010).

For these reasons, the court order portion ORS § 431.966(2)(a)(C) is preempted by federal law. PDMP, therefore, must obey a subpoena issued by the DEA without a court order stating the subpoena complies with federal law.

## II.  Alternatively, the court order portion of ORS § 431.966(2)(a)(C) is not severable from the probable cause requirement, which Plaintiff concedes is preempted.

Oregon law authorizes the Oregon Health Authority to release prescription drug information only "[p]ursuant to a valid court order based on probable cause." ORS §

431.966(2)(a)(C).  Plaintiff concedes that the probable cause requirement of this provision is preempted by federal law, Plaintiff's Brief, Dkt. 25, pp. 8, 10-11, but assumes – without any argument or supporting authority whatsoever – that the court order portion of the provision is severable from the probable cause requirement.  It is not.

"Whether the preempted provisions are severable from the remainder of [a statute] is a matter of state law."  *See  Leavitt v. Jane L.*, 518 U.S. 137, 139 (1996).  Under Oregon law, the invalid portion of a statute is not severable from the remaining parts if, *inter alia*, "the remaining parts are so dependent on the invalid part that the remaining parts would not have been enacted without the invalid part" or "the remaining parts, standing alone, are incomplete and incapable of being executed in accordance with legislative intent."  ORS § 174.040; *see Advocates for Effective Regulation v. City of Eugene*, 32 P.3d 228, 376 (Or. App. 2001).

Here, the court order portion of ORS § 431.966(2)(a)(C) is dependent on, and cannot be executed without, the probable cause requirement of the provision.  Absent the probable cause requirement, it is not clear what a court order is to be "based on."  ORS § 431.966(2)(a)(C).  The Oregon legislature intended courts to enter an order only after assessing whether there is probable cause.  Now that plaintiff concedes that courts can no longer undertake a probable cause assessment, courts are left without any guidance as to what they are to consider in issuing an order for the release of prescription drug information.  The legislature could not have intended such confusion.  Because the court order portion of ORS § 431.966(2)(a)(C) is not severable from the probable cause requirement that plaintiff concedes is preempted, ORS § 431.966(2)(a)(C) is preempted in its entirety.

Defendant DEA'S Combined Memorandum and Response Brief
*Oregon Prescription Drug Monitoring Program v. Drug Enforcement Admin.,*
3:12-cv-02023-HA

**III.    PDMP may not refuse to obey an administrative subpoena issued by the DEA unless it has a good-faith basis for not complying.**

Judicial review of an administrative subpoena is narrow and generally limited to: (1) whether the agency has the authority to investigate; (2) whether the required procedures were followed; and (3) whether the evidence is relevant and material to the investigation. *Golden Valley Electric Assoc.*, 689 F.3d at 1113.  Generally, an administrative subpoena must be enforced unless the information sought is "plainly incompetent" or simply not relevant to any lawful purpose of the agency. *Id*. at 1113-14.

Here, once the DEA has issued a subpoena to PDMP under 21 U.S.C. § 876(c) and a federal court has ordered it to be enforced, PDMP should be required to comply with substantially similar subpoenas that request information related to other people, including patients and doctors.  If PDMP fails to comply with such additional subpoenas, it may be subject to the contempt provision of § 876(c) because the judicial review would be identical to one already conducted and a waste of judicial resources.  Moreover, PDMP would lack good faith in not complying with the form and substance of a substantially similar subpoena that had passed judicial scrutiny.

Accordingly, this Court should grant DEA's motion for summary judgment and rule: (1) that ORS § 431.966(2)(a)(C) is preempted by federal law, and thus, PDMP must obey a subpoena issued by the DEA under 21 U.S.C. § 876 without a court order; and (2) that PDMP may not refuse to obey a subpoena issued by the DEA under 21 U.S.C. § 876 unless it has a good-faith basis for not complying.

**Conclusion**

This Court should grant the DEA's motion for summary judgment.

Dated this 20th day of August 2013.

Respectfully submitted,

S. AMANDA MARSHALL
United States Attorney
District of Oregon

 */s/ Kevin Danielson*
KEVIN DANIELSON
Assistant United States Attorney
Attorneys for Defendant