UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

OREGON PRESCRIPTION DRUG
MONITORING PROGRAM, an agency
of the STATE OF OREGON,

      Plaintiff,

      v.

UNITED STATES DRUG
ENFORCEMENT ADMINISTRATION,
an agency of the UNITED STATES
DEPARTMENT OF JUSTICE,

      Defendant.

Case No. 3:12-cv-02023-HA

OPINION AND ORDER

JOHN DOE 1, et al.,

      Plaintiffs-Intervenors,

      v.

UNITED STATES DRUG
ENFORCEMENT ADMINISTRATION,
an agency of the UNITED STATES
DEPARTMENT OF JUSTICE.

      Defendant in Intervention.

_____

HAGGERTY, District Judge:

      Plaintiff, the Oregon Prescription Drug Monitoring Program (PDMP) brought this action

for declaratory relief against the United States Drug Enforcement Administration (DEA)

1    - OPINION AND ORDER

pursuant to 28 U.S.C. § 2201 to determine its rights and obligations in complying with

administrative subpoenas issued by the DEA. The American Civil Liberties Union of Oregon,

Inc., John Does 1-4, and Dr. James Roe, M.D. (collectively "ACLU" or "intervenors"),

intervened in this matter pursuant to Federal Rule of Civil Procedure 24(a) over the objections of

the DEA in order to raise arguments regarding intervenors' protected health information and

Fourth Amendment rights. All parties have moved for summary judgment. For the following

reasons, the ACLU's Motion for Summary Judgment [27] is granted, the PDMP's Motion for

Summary Judgment [24] is denied as moot, and the DEA's Cross Motions for Summary

Judgment [40 and 42] are denied.

**BACKGROUND**

In 2009, the Oregon legislature created the PDMP, an electronic database maintained by

the Oregon Health Authority to record information about prescriptions of drugs classified in

Schedules II-IV under the federal Controlled Substances Act (CSA).[1] Or. Rev. Stat. (ORS)

431.962. The PDMP became fully operational in 2011. A pharmacy that dispenses a Schedule

II-IV prescription drug in Oregon must electronically report certain information regarding that

prescription to the PDMP including: the quantity and type of drug dispensed, identifying

information about the patient, and identifying information about the practitioner who prescribed

the drug. ORS 431.964. The "primary purpose of the PDMP is to provide practitioners and

pharmacists a tool to improve health care," by providing health care providers with a means to

identify and address problems related to the side effects of drugs, risks associated with the

---

[1] The CSA, 21 U.S.C. § 801 *et seq.*, classifies drugs into five schedules. Schedule I
consists of substances for which there is a high potential for abuse and no currently accepted
medical use. Schedules II-V include drugs with an accepted medical use and with progressively
lower potentials for abuse.

combined effects of prescription drugs with alcohol or other prescribed drugs, and overdose. PDMP Fact Sheet, Wessler Decl. Ex. B. "Approximately 7,000,000 prescription records are uploaded to the system annually." *Id.*

Depending on the drug prescribed, the information reported to PDMP can reveal a great deal of information regarding a particular patient including the condition treated by the prescribed drug. Schedule II-IV drugs can be used to treat a multitude of medical conditions including AIDS, psychiatric disorders, chronic pain, drug or alcohol addiction, and gender identity disorder.

Pursuant to Oregon statute, prescription monitoring information uploaded to the PDMP constitutes "protected health information" and is not subject to disclosure except in limited circumstances. ORS 431.966. A physician or pharmacist may access patient records in the PDMP only if they "certif[y] that the requested information is for the purpose of evaluating the need for or providing medical or pharmaceutical treatment for a patient to whom the practitioner or pharmacist anticipates providing, is providing or has provided care." ORS 431.966(2)(a)(A). Relevant to this case, the PDMP may also disclose patient information "[p]ursuant to a valid court order based on probable cause and issued at the request of a federal, state or local law enforcement agency engaged in an authorized drug-related investigation involving a person to whom the requested information pertains." *Id.* at 431.966(2)(a)(C). The PDMP's public website repeatedly references the privacy protections afforded prescription information and informs visitors that law enforcement officials may not obtain information "without a valid court order based on probable cause for an authorized drug-related investigation of an individual." *See, e.g.,* Oregon PDMP, *Frequently Asked Questions,* (January 31, 2014, 10:12 AM), http://www.orpdmp.com/faq.html.

The CSA empowers the Attorney General, and executive agencies acting pursuant to his authority, with broad authority to issue administrative subpoenas to investigate drug crimes. 21 U.S.C. § 876. Pursuant to § 876(a) "the Attorney General may subpoena witnesses, compel the attendance and testimony of witnesses, and require the production of any records (including books, papers, documents, and other tangible things which constitute or contain evidence) which the Attorney General finds relevant or material to" an investigation regarding controlled substances. These administrative subpoenas are not self enforcing, and "[i]n the case of contumacy by or refusal to obey a subpoena issued to any person, the Attorney General may invoke the aid of any court of the United States within the jurisdiction of which the investigation is carried on . . . to compel compliance with the subpoena." *Id*. at § 876(c). While there is no penalty for failing to comply with a § 876 subpoena, failure to obey a court order enforcing the subpoena "may be punished by the court as contempt thereof." *Id.*

The DEA has sought to utilize § 876 subpoenas to obtain prescription records from the PDMP. However, the PDMP has refused to comply with the administrative subpoenas on the basis that to do so would violate Oregon law. In at least one instance, the DEA obtained judicial enforcement of a § 876 subpoena against the PDMP for the production of all Schedule II-IV controlled substance prescriptions issued by a particular physician during the course of approximately seven months. *United States v. Oregon Prescription Drug Monitoring Program*, 3:12-mc-00298 (D. Or. Aug. 27, 2012). In that matter, the magistrate judge found ORS 431.966's court order requirement to be preempted by § 876. However, the PDMP was not provided with an opportunity to contest the validity of the subject administrative subpoena. The State of Oregon complied with the court enforced subpoena in that matter, however, additional subpoenas have since been issued to the PDMP and the State of Oregon continues to maintain its

position that it cannot comply with such subpoenas absent a court order.

On September 11, 2012, the DEA issued an administrative subpoena to the PDMP demanding the prescription records for an individual patient and on September 17, 2012, the DEA issued another administrative subpoena to the PDMP demanding a summary of all prescription drugs prescribed by two physicians. The PDMP objected to each subpoena on the basis that disclosure of the requested information would violate Oregon law. Shortly thereafter, the PDMP initiated this action for declaratory relief asking this court to determine whether the Supremacy Clause of the United States Constitution and § 876 preempt ORS 431.966.

The ACLU intervened in this matter pursuant to Federal Rule of Civil Procedure 24(a) in order to raise arguments regarding intervenors' protected health information and Fourth Amendment Rights. The four John Does each utilize prescribed Schedule II-IV substances for the treatment of various medical conditions. John Doe 1 is a retired CEO and currently takes two Schedule II drugs to treat extreme pain caused by recurring kidney stones. John Doe 2, an attorney, and John Doe 4, a medical student, have both been diagnosed with gender identity disorder and utilize prescription testosterone, a Schedule III drug, for hormone replacement therapy. John Doe 3 is a small business owner and takes alprazolam, a Schedule IV drug, to treat anxiety and post-traumatic stress disorders as well as Vicodin, a Schedule III drug, as a pain reliever. Each of the John Does considers his health information to be private and is distressed that the DEA might obtain his prescription information, and by extension information about his medical conditions, without a warrant.

Doctor James Roe, M.D., is an internist who primarily treats geriatric and hospice patients and as a consequence, prescribes more Schedule II-IV drugs than a typical physician. He has been interviewed and investigated by the DEA in the past, and is concerned that his patients'

prescription records have been accessed or may be accessed without a warrant. He asserts that pressure from the DEA has resulted in changes to his prescribing practices.

## STANDARDS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In this case, the parties agree on all material facts and the dispute is purely legal.

## DISCUSSION

Each of the parties has moved for summary judgment. The DEA contends that § 876 preempts ORS 431.966's court order requirement pursuant to the Supremacy Clause of the United States Constitution and that the PDMP should be ordered to comply with the DEA's administrative subpoenas. Additionally, the DEA contends that intervenors do not have standing to present their arguments concerning the Fourth Amendment, that their claims are not ripe, and that they do not have a protected privacy interest in their prescription records. The PDMP contends that, at most, only ORS 431.966's probable cause requirement is preempted as § 876 subpoenas are not self-enforcing. Intervenors contend that the administrative subpoenas are unlawful as they violate the Fourth Amendment.

### A. Standing and Ripeness

The DEA contends that intervenors do not have standing to present their arguments related to the Fourth Amendment. Intervenors contend that they do not need Article III standing in accordance with Ninth Circuit precedent, and in any case, do have such standing.

This court previously permitted the ACLU to intervene in this matter pursuant to Federal Rule of Civil Procedure 24(a). There is no basis to reconsider that ruling here. Rather, the question is whether Article III erects any barriers to the justiciability of intervenors' arguments

concerning the Fourth Amendment.

In the Ninth Circuit, courts "resolv[e] intervention questions without making reference to standing doctrine." *Portland Audubon Soc. v. Hodel*, 866 F.2d 302, 308 n.1 (9th Cir. 1989), *abrogated on other grounds by Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011); *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 527–29 (9th Cir.1983). The Ninth Circuit has "declined to incorporate an independent standing inquiry into our circuit's intervention test," though the intervention test implicitly includes some standing analysis. *Id.* Although not all circuits have reached agreement on this issue, the Ninth Circuit is not alone and the question has not been resolved by the Supreme Court. *Diamond v. Charles*, 476 U.S. 54, 68-69 (1986) (noting that the Courts of Appeals have reached different conclusions in determining "whether a party seeking to intervene before a District Court must satisfy not only the requirements of Rule 24(a)(2), but also the requirements of Art. III").

Were intervenors pursuing claims wholly distinct from those of the PDMP, this court might find cause to conduct a standing analysis. *See e.g. San Juan County, Utah v. United States*, 503 F.3d 1163, 1171 (5th Cir. 2007) ("so long as there [is] Article III standing for the original party on the same side of the litigation as the intervenor, the intervenor need not itself establish standing"). However, intervenors pursue claims related to PDMP's claims. The PDMP has sought declaratory relief to determine its rights and obligations in complying with the DEA's administrative subpoenas. Before this court can determine how to resolve any conflict between the PDMP's obligations under ORS 431.966 and administrative subpoenas issued pursuant § 876, the court must first determine that the DEA's issuance of the administrative subpoenas is a constitutional exercise of its authority and that a conflict actually exists. *Oregon v. Ashcroft*, 368 F.3d 1118, 1126 (9th Cir. 2004) (noting that the "CSA shall not be construed to

preempt state law unless there is a 'positive conflict' between" federal and state law and that

"'federal courts must, whenever possible, . . . avoid or minimize conflict between federal and

state law'") (quoting 21 U.S.C. § 903; *United States v. Oakland Cannabis Buyers' Coop.*, 532

U.S. 483, 502 (2001) (Stevens, J. concurring)); *see also, Alden v. Maine*, 527 U.S. 706, 731

(1999) ("the Supremacy Clause enshrines as 'the supreme Law of the Land' only those Federal

Acts that accord with the constitutional design") (citing *Printz v. United States*, 521 U.S. 898,

924 (1996)). If the DEA's administrative subpoenas violate the Fourth Amendment as applied to

the PDMP, as intervenors contend, there is no conflict between ORS 431.966 and federal law.

This court "has a Case or Controversy before it regardless of the standing of the intervenors." *Id.*

at 1172. The ACLU's arguments are merely an extension of those advanced by the PDMP

requiring this court to begin at the beginning and consideration of those arguments in no way

destroys the controversy already in existence. Accordingly, the court concludes that intervenors

do not need standing to raise arguments concerning the Fourth Amendment.

The court also concludes that intervenors' claims are ripe for adjudication. "Whether

framed as an issue of standing or ripeness, the inquiry is largely the same: whether the issues

presented are 'definite and concrete, not hypothetical or abstract." *Wolfson v. Brammer*, 616 F.3d

1045, 1058 (9th Cir. 2010) (quoting *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134,

1139 (9th Cir. 2000) (en banc)). Regardless of whether intervenors themselves are currently

subject to investigation by the DEA[2], it is clear that PDMP's rights and obligations must be

determined at this time. The DEA has sought, and continues to seek, the use of administrative

---

[2] It is unclear when, if ever, the DEA believes a challenge brought pursuant to the Fourth Amendment would be ripe. The DEA does not notify its targets of its investigations, and even if an individual were prosecuted, it is uncertain whether the DEA would notify that individual regarding the DEA's use of administrative subpoenas to gather evidence.

subpoenas to obtain individuals' prescription records.  As discussed above, in order to determine whether PDMP must comply with the DEA's administrative subpoenas, and whether a positive conflict exists between § 876 and ORS 431.966, the court will first determine whether the issuance of the subpoenas is a constitutional exercise of the DEA's authority.  Accordingly, the court must evaluate intervenors' claims at this time.  The questions presented by this case are "purely legal, and will not be clarified by further factual development." *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 581 (1985).  Accordingly, those questions are now ripe for adjudication.

### B. Fourth Amendment

The Fourth Amendment provides protection against "unreasonable searches and seizures." U.S. CONST. amend. IV.  "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967).  The Fourth Amendment does not protect against all searches or seizures, rather it guards against searches and seizures of items or places in which a person has a reasonable expectation of privacy. *United States v. Ziegler*, 474 F.3d 1184, 1189 (9th Cir. 2007); *In re Gimbel*, 77 F.3d 593, 599 (2d Cir. 1996) (holding that the Fourth Amendment does not allow the use of an administrative subpoena where "a subpoena respondent maintains a reasonable expectation of privacy in the materials sought by the subpoena").

The Fourth Amendment protects people, not places, and to invoke the protections of the Fourth Amendment, a person must first show that they have "an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.'" *Katz*, 389 U.S. at 361 (Harlan, J., concurring).

It is clear from the record that each of the patient intervenors has a subjective expectation of privacy in his prescription information, as would nearly any person who has used prescription drugs. Each has a medical condition treated by a Schedule II-IV drug and each considers that information private. Doctor James Roe also has a subjective expectation of privacy in his prescribing information. *See* Decl. Dr. James Roe (describing his duty of confidentiality to his patients and how law enforcement has made doctors, including himself, reluctant to prescribe schedule II-IV drugs where medically indicated). By reviewing doctors' prescribing information, the DEA inserts itself into a decision that should ordinarily be left to the doctor and his or her patient. Because each of the individual intervenors has a subjective expectation of privacy, the question becomes whether intervenors' subjective expectations of privacy are expectations that society is prepared to recognize as reasonable.

There is "no talisman that determines in all cases those privacy expectations that society is prepared to accept as reasonable." *O'Connor v. Ortega*, 480 U.S. 709, 715 (1987). Rather, courts must weigh "such factors as the intention of the Framers of the Fourth Amendment, the uses to which the individual has put a location, and our societal understanding that certain areas deserve the most scrupulous protection from government invasion." *Id.* (quoting *Oliver v. United States*, 466 U.S. 170, 178 (1984)).

Medical records, of which prescription records form a not insignificant part, have long been treated with confidentiality. The Hippocratic Oath has contained provisions requiring physicians to maintain patient confidentiality since the Fourth Century B.C.E. The ACLU cites compelling evidence demonstrating that a number of signers of the Declaration of Independence and delegates to the Constitutional Convention were physicians trained at the University of Edinburgh, which required its graduates to sign an oath swearing to preserve patient

confidentiality.  Baker Decl. ¶¶ 4-10.  It is not surprising that privacy protections for medical

records have not only been placed in Oregon law, but are also enshrined in certain aspects of

federal law.  *See, e.g.*, Health Insurance Portability and Accountability Act, Privacy Rule, 45

C.F.R. § 164.512 (providing protections for "protected health information").

In *Whalen v. Roe*, the Supreme Court had occasion to consider the right to informational

privacy in prescription records under the Due Process Clause of the Fourteenth Amendment. 429

U.S. 589 (1977).  While *Whalen* is not controlling in this case because the Court did not reach

any claims raised pursuant to the Fourth Amendment, it is nevertheless instructive.  In *Whalen*,

the Court considered whether New York's collection of prescription information in a

computerized database violated doctors' and patients' constitutionally protected privacy rights.

429 U.S. at 591.  The Court noted that there are two types of privacy interests implicated by

prescription records: "One is the individual interest in avoiding disclosure of personal matters

and another is the interest in independence in making certain kinds of important decisions." *Id.*

at 699-600.  New York's program could make "some patients reluctant to use, and some doctors

reluctant to prescribe, such drugs even when their use is medically indicated [such that] the

statute threatens to impair both [plaintiffs'] interest in the nondisclosure of private information

and also their interest in making important decisions independently." *Id.* at 600.  Despite the fact

that the Court acknowledged that privacy rights were implicated, it ultimately concluded that

New York's prescription information program adequately safeguarded patients' and doctors'

informational privacy rights under the Fourteenth Amendment. *Id.*  The court declined to address

the plaintiffs' Fourth Amendment arguments because the case did not "involve affirmative,

unannounced, narrowly focused intrusions into individual privacy during the course of criminal

investigations." *Id.* at 604 n.32.

In *Ferguson v. City of Charleston,* the Supreme Court analyzed medical records under the Fourth Amendment. 532 U.S. 67 (2001). In that case, a state hospital was conducting drug tests of pregnant women and then providing the results of those tests to law enforcement. *Id.* at 72-75. The Supreme Court noted that the "reasonable expectation of privacy enjoyed by the typical patient undergoing diagnostic tests in a hospital is that the results of those tests will not be shared with nonmedical personnel without her consent." *Id.* at 78. The Court found that "an intrusion on that expectation of privacy may have adverse consequences because it may deter patients from receiving needed medical care." *Id.* at 78 n.14 (citing *Whalen,* 429 U.S. at 599-600). The Court concluded that the "special need" exception to the warrant requirement was inapplicable to the search because the "central and indispensable feature of the policy from its inception was the use of law enforcement to coerce patients into substance abuse treatment." *Id.* at 80.

The Ninth Circuit has also had occasion to evaluate whether patients and doctors have a reasonable expectation of privacy in medical records protected by the Fourth Amendment. In *Tucson Women's Clinic v. Eden,* the Ninth Circuit evaluated an Arizona regulation that required abortion clinics to submit to warrantless inspections by the Arizona Department of Human Services. 379 F.3d 531, 537 (9th Cir. 2004). The Ninth Circuit determined that the administrative search exception to the Fourth Amendment which, in some circumstances, allows warrantless searches of closely regulated businesses, was inapplicable to the searches authorized by the Arizona regulations. *Id.* at 550. The court determined that abortion services were not sufficiently regulated to fall within the exception. *Id.* More importantly, the court noted that "the theory behind the closely regulated industry exception is that persons engaging in such industries, and persons present in those workplaces, have a diminished expectation of privacy." *Id.* That theory was inapplicable to abortion clinics, "where the expectation of privacy is *heightened,*

given the fact that the clinic provides a service grounded in a fundamental constitutional liberty, and that all provision of medical services in private physicians' offices carries with it a high expectation of privacy for both physician and patient." *Id.* Accordingly, the Ninth Circuit held that the statute and regulations were violative of the Fourth Amendment.[3]

In this matter, the court easily concludes that intervenors' subjective expectation of privacy in their prescription information is objectively reasonable. Although there is not an absolute right to privacy in prescription information, as patients must expect that physicians, pharmacists, and other medical personnel can and must access their records, it is more than reasonable for patients to believe that law enforcement agencies will not have unfettered access to their records.[4] The prescription information maintained by PDMP is intensely private as it connects a person's identifying information with the prescription drugs they use. The DEA attempts to draw a distinction between medical records and prescription information in order to distinguish the present case from *Tucson Women's Clinic*'s conclusion that "all provision of medical services in private physicians' offices carries with it a high expectation of privacy." 379 F.3d at 550. This distinction is very nearly meaningless. By obtaining the prescription records for individuals like John Does 2 and 4, a person would know that they have used testosterone in

---

[3] Citing *Whalen*, the Ninth Circuit balanced five factors in weighing the governmental interest in obtaining information against the individual's privacy interest and found that the searches also violated plaintiffs' informational privacy rights under the Fourteenth Amendment. 379 F.3d at 551-53. That balancing test is inapplicable in the context of the Fourth Amendment.

[4] The DEA argues that because there are privacy protocols within the DEA, and risk of public disclosure of prescription information is low, there is no violation of patients' privacy interests. The Fourth Amendment was not designed to protect public disclosure of individuals' private information, but to protect people from government intrusion. The DEA also contends that there is no reasonable expectation of privacy because the DEA can request records from individual pharmacies. Whether or not such requests would conform with the Fourth Amendment is not before the court and the DEA's ability to obtain limited prescription information in a more cumbersome manner is irrelevant to this court's analysis of the administrative subpoenas at issue.

13    - OPINION AND ORDER

particular quantities and by extension, that they have gender identity disorder and are treating it

through hormone therapy.  It is difficult to conceive of information that is more private or more

deserving of Fourth Amendment protection.  That this expectation of privacy in prescription

information is protected in ORS 431.966 and advertised on PDMP's public website, makes that

expectation all the more reasonable.

The DEA contends that even if intervenors have a reasonable expectation of privacy in

their prescription records, the DEA may still utilize administrative subpoenas to obtain the

records and that the "third-party doctrine" undermines any expectation of privacy.  The DEA

relies on *United States v. Golden Valley Elec. Ass'n*, 689 F.3d 1108, 1115 (9th Cir. 2012) and

contends that because the Fourth Amendment's strictures are relaxed in the context of

administrative subpoenas, that the DEA should be able to obtain the prescription information

without a warrant.  In *Golden Valley Elec. Ass'n*, the Ninth Circuit discussed the Fourth

Amendment's limited protections as applied to administrative subpoenas.  The court noted that:

> It is sufficient for Fourth Amendment purposes if the inquiry is within the
> authority of the agency, the demand is not too indefinite and the information
> sought is reasonably relevant.  The gist of the protection is in the requirement,
> expressed in terms, that the disclosure sought shall not be unreasonable.

*Id.* (quoting *Reich v. Montana Sulphur & Chemical Co.*, 32 F.3d 440, 448 (9th Cir. 1994)).

In *Golden Valley*, the Ninth Circuit upheld the DEA's use of administrative subpoenas to

obtain electric company records pertaining to electricity consumption at three addresses.  In so

holding, the court noted that a "customer ordinarily lacks a reasonable expectation of privacy in

an item, like a business record, in which he has no possessory or ownership interest."  *Id.* at 1116

(quoting *United States v. Cormier*, 220 F.3d 1103, 1108 (9th Cir.2000)).  The court specifically

noted that "depending on the circumstances or the type of information, a company's guarantee to

its customers that it will safeguard the privacy of their records might suffice to justify resisting an

14    - OPINION AND ORDER

administrative subpoena." *Id.* Here, it is clear that the information sought by the DEA is relevant to its investigations, but the question is whether the use of an administrative subpoena to obtain the information sought is reasonable. The prescription records at issue here are entirely unlike electric company records in which an individual lacks a reasonable expectation of privacy. Much like the information safeguarded in *Tucscon Women's Clinic*, the prescription records here are protected by a heightened privacy interest rendering the use of administrative subpoenas unreasonable.

Lastly, the DEA contends that intervenor-plaintiffs expectation of privacy is unreasonable pursuant to the "third party doctrine." Under that theory, an individual does not have a reasonable expectation of privacy in information held by a third party. *See e.g.*, *United States v. Miller*, 425 U.S. 435 (1976) (no expectation of privacy in bank records); *Smith v. Maryland*, 442 U.S. 735 (1979) (same for telephone numbers a person dials). In *Miller*, the Supreme Court's analysis turned largely on the fact that Miller "voluntarily conveyed" the information contained in the bank records to the bank and in *Smith*, the court made the same determination for a person dialing telephone numbers.

However, this case is markedly different from *Miller* and *Smith* for two reasons. The first is that the PDMP's records are "more inherently personal or private than bank records," and are entitled to and treated with a heightened expectation of privacy. *Golden Valley Elec. Ass'n*, 689 F.3d 1116. *See, DeMassa v. Nunez*, 770 F.2d 1505 (9th Cir. 1985) (attorney's clients have reasonable expectation of privacy in their legal files even though kept and maintained by attorney). Secondly, patients and doctors are not voluntarily conveying information to the PDMP. The submission of prescription information to the PDMP is required by law. The only way to avoid submission of prescription information to the PDMP is to forgo medical treatment

or to leave the state. This is not a meaningful choice. *See, In re Application of U.S. for an Order Directing a Provider of Electronic Communication Service to Disclose Records to Government*, 620 F.3d 304, 317 (3rd Cir. 2010) (holding that cell phone users retain a reasonable expectation of privacy in their location information because users have not voluntarily shared their information with the cellular provider in any meaningful way).

Because the court concludes that the DEA's use of administrative subpoenas to obtain prescription records from the PDMP violates the Fourth Amendment, the court does not reach the issues raised pursuant to the Supremacy Clause.

## CONCLUSION

For the foregoing reasons, the ACLU's Motion for Summary Judgment [27] is GRANTED, the PDMP's Motion for Summary Judgment [24] is DENIED AS MOOT, and the DEA's Cross Motions for Summary Judgment [40 and 42] are DENIED.

IT IS SO ORDERED.

DATED this __11__ day of February, 2014.

_____
Ancer L. Haggerty
United States Judge